STATE OF NORTH CAROLINA v. BRUCE ELLIS WATSON
AND RICHARD MICHAEL CAPERS

No. 7321SC540

(Filed 8 August 1973)

1. Searches and Seizures § 4— search under warrant — requirement that entry be demanded and denied

In the absence of special or emergency circumstances, an officer may not lawfully make a forcible entry into a private dwelling unless he first gives notice of his authority, makes demand and is denied entry.

2. Criminal Law § 84; Searches and Seizures § 4— search under warrant — requirement that entry be demanded and denied

Entry of defendant's home by officers was lawful and marijuana seized pursuant to a valid search warrant was properly admitted into evidence where officers, with a valid search warrant, approached defendant's apartment, one of the officers observed someone looking from behind a pulled back curtain in the apartment, thought he was recognized and ran to the door of the apartment, made two fast

State v. Watson

knocks, opened the door immediately and entered shouting "Police. Search warrant." pulling his revolver at the same time, then identified himself to the occupants of the apartment and read the search warrant to defendant before conducting the search.

3. **Constitutional Law § 31— confidential informer — disclosure of identity not required**

Where officers found within the apartment occupied by defendants 69.5 grams of marijuana, one capsule of phencyclidine, various miscellaneous materials showing marijuana remnants and residue, and personal papers of both defendants indicating the apartment as their current address, evidence was sufficient to sustain a jury finding of possession of marijuana with intent to distribute and possession of phencyclidine without disclosure of the identity of the informant who gave information upon which the search warrant was based.

APPEAL by defendants from *Collier, Judge,* 26 March 1973 Session of Superior Court held in FORSYTH County.

Defendants were charged in separate bills of indictment with possession of more than 5 grams of marijuana with intent to distribute, in violation of G.S. 90-95(a)(1). They had also appealed to the superior court from convictions in the district court upon warrants for possession of phencyclidine, a controlled substance. Without objection all cases against both defendants were consolidated for trial.

Defendants entered not guilty pleas and were convicted by the jury upon all charges.

The evidence for the State shows, in substance, that a search warrant for apartment 1B, Ye Old Barn Apts., 100 Powers Road, Winston-Salem, was obtained by officers of the Sheriff's Department of Forsyth County about 7:00 p.m. on 23 December 1972 upon information furnished by a confidential informant that he had seen a quantity of marijuana in the apartment within the past four hours. Eight officers proceeded to the premises in two cars and parked in front of the apartment at about 8:30 p.m. As they were getting out of the cars, Officer E. P. Oldham saw someone with the curtains pulled back looking out of a window of the apartment and saw someone look out of the bedroom to the door. He immediately ran to the apartment door. When he got to the door he knocked twice with his right hand loud enough to be heard and then reached for the doorknob. He found that the door was not locked. As he opened the door and entered the apartment, he shouted, "Police. Search warrant," and pulled his revolver. After he stepped into

the room he identified himself. He was not in uniform but held in his left hand the search warrant with his badge clipped to it. He showed defendant Capers the search warrant and read it to him before conducting the search. Officer Oldham testified that he acted quickly to enter the apartment because he thought the officers had been recognized by someone looking from the apartment window.

Upon search of the apartment pursuant to the warrant, the officers found two clear plastic bags containing green vegetable material later identified as marijuana. The smaller bag weighing 13 grams was on a foot locker table in the living room and the larger weighing 56.5 grams was concealed between the mattresses in the right rear bedroom. One red gelatin capsule containing white powder, which was later determined to be phencyclidine, was found on the bottom shelf of a cabinet in the only bathroom in the apartment. Various miscellaneous materials which tended to show use of marijuana were discovered about the premises. They included pipes with marijuana residue, pipe rack, packs of rolling papers, pipe cleaning outfit with marijuana residue, a small portion of a rolling outfit, ashtray containing partially burned marijuana, clear plastic vial containing particles of marijuana, glass flask, and boxes with remnants of marijuana. In the left rear bedroom the officers, among other things, found a motorcycle registration card for a motorcycle listed to Richard Michael Capers, a letter and Christmas card addressed to Mike Capers, personal check bearing name of R. Michael Capers and the address as 100 Powers Road, Apartment 1-B, Winston-Salem, North Carolina, and boxes containing remnants of marijuana on or about the dresser. In the right rear bedroom the search disclosed personal papers, military papers, letters, library card, and bank notices with the name and address of Bruce Watson, 100 Powers Road, Apartment 1-B, Winston-Salem.

An expert chemist testified that the green vegetable material was marijuana, that the residue and remnants upon the various articles was marijuana, and that the white powder in the red capsule was phencyclidine.

The defendants moved to suppress all evidence obtained by the search. They also moved that the name of the confidential informant be revealed and that he be produced as a witness. Both motions were denied by the court after *voir dire* hearings.

State v. Watson

Defendants offered no evidence.

The court consolidated all cases against each defendant for judgment and imposed similar sentences of two to four years which were suspended and the defendants placed on probation for a period of five years. From this judgment, both defendants appealed.

*Attorney General Morgan, by Assistant Attorney General Icenhour, for the State.*

*Badgett, Calaway & Phillips, by Richard G. Badgett, for defendant appellant Bruce Ellis Watson.*

*Jenkins, Lucas & Babb, by F. Gaither Jenkins and Judson D. DeRamus, Jr., for defendant appellant Richard Michael Capers.*

BALEY, Judge.

On this appeal defendants object primarily to the methods by which the officers have obtained the evidence which resulted in their convictions. They assert that the prosecution should be required to disclose the name of the confidential informant who gave the information upon which a search warrant was based and make him available to testify in their defense. They challenge the manner in which the search warrant was served as constituting an illegal entry thereby tainting the fruits of the search. These questions are serious and concern the delicate balance which must be maintained between the protection of the constitutional rights of the individual and the fundamental right of society to protect and preserve its members by the proper enforcement of the law.

It seems clear that the search warrant authorizing the search of the apartment occupied by the defendants was lawfully obtained. Its validity is not seriously disputed. It described the premises and evidence for which search was to be made and presented sufficient information by affidavit to justify its issuance. The informant, who was known to the officer and had previously furnished reliable information, reported that he had seen marijuana in the apartment of the defendants within the preceding four hours. Combined with the personal knowledge of the officers who were acquainted with the defendant Capers and had observed known users of narcotics come and go on his premises, there was ample information to show reasonable

cause to believe that the proposed search would reveal evidence of the commission of a crime and to support the validity of the search warrant. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755.

However, defendants strongly contend that the entry and search made by the officers even if pursuant to a valid search warrant was illegal and that evidence obtained upon such search should be suppressed.

[1]   While there is no statute in North Carolina which specifically prescribes the method of serving a search warrant, there are implications in the opinion of the North Carolina Supreme Court that, in the absence of special or emergency circumstances, an officer may not lawfully make a forcible entry into a private dwelling unless he first gives notice of his authority, makes demand, and is denied entry.

> "Ordinarily, a police officer, absent invitation or permission, may not enter a private home to make an arrest or otherwise seize a person unless he first gives notice of his authority and purpose and makes a demand for and is refused entry. *Without special or emergency circumstances,* an entry by an officer which does not comply with these requirements is illegal. . . . " (Emphasis added.) *State v. Sparrow,* 276 N.C. 499, 512, 173 S.E. 2d 897, 905. *See also State v. Covington,* 273 N.C. 690, 161 S.E. 2d 140.

Again in *In re Walters,* 229 N.C. 111, 113, 47 S.E. 2d 709, 710, the court states:

> " . . . [E]ven the strong arm of the law may not reach across the threshold of one's dwelling and invade the sacred precinct of his home *except under authority of a search warrant issued in accord with pertinent statutory provisions.*" (Emphasis added.)

In *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706, the court found that the officer in serving an arrest warrant did not make an illegal entry when

> "The State's evidence showed that Deputy Sheriff Respass 'twice called out' in lieu of knocking, before opening the door. Defendant had observed his uniform and was aware of his official status. The officer knew that defendant had observed him and was therefore justified in proceeding to open the door. Under the circumstances of this case there was sufficient compliance with the rationale of *Spar-*

*row* and *Covington,* to the effect that entrance must be demanded and denied before a police officer can proceed to forcibly enter a dwelling for the purpose of making an arrest." *State v. Harvey, supra,* at 11, 187 S.E. 2d at 713.

Thus our court has given approval to a forcible entrance of a dwelling to serve an arrest warrant under special conditions and circumstances.

In *Ker v. California,* 374 U.S. 23, 10 L.Ed. 2d 726, 83 S.Ct. 1623 (1963), the United States Supreme Court recognized that an entry could be made by officers without notice of authority and demand for admittance, even without a warrant, when there was reasonable ground to believe that the occupant was in possession of narcotics which could be quickly and easily destroyed, quoting with approval from *People v. Maddox,* 46 Cal. 2d 301, 306, 294 P. 2d 6, 9, *cert. den.,* 352 U.S. 858, 1 L.Ed. 2d 65, 77 S.Ct. 81 (1956) :

> " . . . Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844 (California statute similar to G.S. 15-44 requiring a demand for admittance). Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. . . . Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance." *Ker v. California, supra,* at 39-40, 10 L.Ed. 2d at 741-42, 83 S.Ct. at 1633.

While under ordinary circumstances the officers must announce their purpose and demand admittance before making a forcible entry to conduct a search pursuant to a valid search warrant, such an entry may be proper under special and emergency conditions when it reasonably appears that such an announcement and demand by the officer and the delay consequent thereto would provoke the escape of the suspect, place the officer in peril, or cause the destruction of disposition of critical evidence.

[2]   In the present case the officers had reliable information that marijuana had been seen in the apartment of the defendants within the preceding four hours. As the affidavit to obtain the search warrant sets out, they had made other arrests upon information of this informant and Officer Oldham testified that they had made searches where they were unable to locate narcotics but heard commodes flushing prior to and after their entry and had reason to conclude that the evidence was being destroyed. When eight officers were getting out of two cars in plain view in the parking place in front of the defendants' apartment, Officer E. P. Oldham saw someone with the curtain pulled back looking from the window of the apartment and saw someone look out of the bedroom to the door. The officers had known defendant Capers for approximately eighteen months and had observed his apartment and guests. Most of the officers were known by sight and name to those engaged in narcotics traffic. Officer Oldham testified that he thought the officers were identified and he ran from the car to the door of the apartment. He made two fast knocks with his right hand loud enough to be heard and then reached for the doorknob. The door was not locked and he opened it and entered shouting "Police. Search warrant," pulling his revolver at the same time. He immediately identified himself to the occupants and read the search warrant to defendant Capers before conducting the search.

The length of time an officer must wait before breaking in to serve a valid warrant must be reasonable under the circumstances as they appear to him. He was forced to act on a quick appraisal of the situation with which he was confronted without benefit of the hindsight possessed by those who review his actions. We hold that under the factual circumstances of this case the entry was lawful, and the motion to suppress was properly denied.

[3]   The defendants contend that the identity of the informant who gave information upon which the search warrant is based is essential to their defense. In this case the officers found within the apartment occupied by defendants 69.5 grams of marijuana, one capsule of phencyclidine, and various miscellaneous materials showing marijuana remnants and residue. Personal papers of both defendants indicating the apartment as their current address were sufficient to show their occupancy. There was abundant evidence to sustain a jury finding of possession

of marijuana with intent to distribute and possession of phencyclidine. All of these narcotics and other materials were in the custody and subject to the disposition of the defendants who were and had been residing at the apartment where they were found.

"An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Harvey, supra,* at 12, 187 S.E. 2d at 714. *See also State v. Allen,* 279 N.C. 406, 183 S.E. 2d 680; Annot., 91 A.L.R. 2d 810 (1963).

The disclosure of the informant whose information led the police to the defendants would not be relevant or helpful to the defendants as there is ample independent evidence of their guilt. The activities of the confidential informant are only collaterally connected with the offenses for which the defendants were on trial. Disclosure of the identity of a confidential informer will not be allowed unless it clearly appears such disclosure would be relevant or helpful to the defense. *State v. Fletcher* and *State v. St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405; *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53.

Defendants have been convicted by a jury in a fair trial free from prejudicial error.

No error.

Judges CAMPBELL and BRITT concur.