STATE OF NORTH CAROLINA V. GAITHER DEAN PREVETTE, WILLIAM NORMAN STAFFORD, WALTER LEE ST. JOHN, RANDY MARYLON GRIMES, PHILLIP MARK SUTTON, AND FRANCIS EARL WOOD

No. 788SC753

(Filed 6 November 1979)

**1. Searches and Seizures § 33— seizure of evidence in plain view**

Police may seize evidence in plain view without a search warrant when (1) the officer has a right to be where he is when the evidence comes into view, (2) the officer inadvertently discovers the incriminating evidence, and (3) exigent circumstances exist to justify a warrantless entry in order to seize the evidence.

**2. Searches and Seizures § 33— seizure of marijuana in plain view**

Officers who had received a telephone call from an unknown tipster that a house near a certain dairy farm was full of marijuana lawfully seized marijuana from defendants' premises without a warrant under the plain view doctrine where the evidence supported the court's determinations that officers were lawfully on defendants' premises in that they went to the area in which the dairy farm was located to conduct a general inquiry and investigation; discovery of the marijuana was inadvertent in that the officers, while standing on the porch of defendants' house, could see through the screen door and observed marijuana inside the house; and the officers were confronted with exigent circumstances which required an immediate search of the premises for suspects and more contraband because the officers had reasonable grounds to believe that the possessors of the marijuana were aware that the police had

discovered it, and that such persons might present a danger to the officers, escape or destroy the evidence.

**3. Searches and Seizures § 41— exigent circumstances— excusal from knock and announce requirements**

   The exigent circumstances which justified a warrantless search of defendants' house under the plain view doctrine also excused officers from the knock and announce requirement before entering the house.

APPEAL by defendants from *Cowper, Judge.* Judgments entered 23 March 1978 in Superior Court, LENOIR County. Heard in the Court of Appeals 5 December 1978.

Defendants were charged with felonious possession of marijuana with intent to manufacture, sell, and deliver, a violation of the North Carolina Controlled Substances Act. Each defendant tendered a plea of not guilty, and the six cases were consolidated for trial. All defendants moved to suppress the evidence, approximately eight tons of marijuana, seized by officers. After a hearing pursuant to Section 979(b) of Chapter 15A of the General Statutes of North Carolina, the trial court found facts, made conclusions of law, and denied the motions. Each defendant then entered a plea of guilty, judgments were entered, and defendants appealed. Such facts as are necessary to this opinion appear below.

   *Attorney General Edmisten, by Assistant Attorney General Isham B. Hudson, Jr., for the State.*

   *Gerrans & Spence, by C. E. Gerrans, for defendants Gaither D. Prevette, William N. Stafford, Walter L. St. John, and Randy M. Grimes.*

   *White, Allen, Hooten, Hodges & Hines, by Thomas J. White and W. H. Paramore III, for defendants Phillip M. Sutton and Francis E. Wood.*

MARTIN (Harry C.), Judge.

In *State v. Prevette,* 39 N.C. App. 470, 250 S.E. 2d 682, *disc. rev. denied,* 297 N.C. 179, 254 S.E. 2d 38 (1979), this Court held the stipulation by the state and defendants that all defendants had standing to challenge the validity of the· searches and seizures was invalid and not binding upon it. We remanded to superior court for a factual determination of whether defendants

or any of them had a protectible interest in the searched premises under the Fourth Amendment of the United States Constitution. A hearing was held 4 September 1979. That court found facts and concluded that all defendants did have standing to challenge the legality of the search. The state did not except to this ruling of the trial judge; therefore, it is not presented to this Court for review.

We now address the question whether defendants have a meritorious challenge to the trial court's denial of their motions to suppress the evidence obtained by search and seizure.

Defendants initially object to certain findings of fact made by the trial judge at the hearing on their motions to suppress. They argue that these four findings are not supported by the evidence and even conflict with it.

The judge found that after receiving a telephone call from an "unknown tipster" who reported that a house near Wood's Dairy Farm in Lenoir County was full of marijuana, Deputy Sheriff Robert Pelletier discussed the tip with Kinston police officers. Having decided that the information was not sufficient to obtain a search warrant, "they decided to go to LaGrange to attempt to get further information about the situation by conducting a general inquiry and investigation of the area by determining whether or not the houses were occupied and then interviewing the occupants, if any; . . .." Defendants' objection to the quoted portion of the finding is based on testimony by four of the officers that their sole purpose in going to that section of the county was to locate the marijuana referred to in the phone call.

When the trial judge's findings of fact are supported by competent evidence they will not be disturbed on appeal, even though the evidence is conflicting. *State v. Small*, 293 N.C. 646, 239 S.E. 2d 429 (1977); *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971). We find competent evidence in the record to support this finding. Detective Lt. Smith of the sheriff's department testified: "We just decided to get in the car and go up to Jenny Lind and look for any signs of movement or anything else to give us an indication of where we should be looking primarily. We did not really have a plan." Furthermore, Smith testified: "We saw lights there, we were going to try to find out who was there or whatever. We were going to knock on the door." Other portions

of the record also reflect the fact that the officers intended to conduct a general investigation of the area.

The judge found that the officers proceeded to check out two locations in the Jenny Lind section of Lenoir County, the site of Wood's Dairy Farm. They approached a house at the second location, using a dirt path. They had no search warrant. They encountered a tractor parked across the path. As they walked up to the house they heard a back door slam. One of the defendants ran from the door and attempted to hide in a cornfield. He was apprehended and questioned. He went with the officers to the front of the house. The officers stepped into the light at the front of the house. The front door was open but a screen door barred the entrance. Defendants object to the finding "that the officers standing on the porch could see through this screen door; that they then observed in plain view inside the house green vegetable material scattered on the floor, which, in their opinion appeared to be marijuana; also they smelled an odor from inside which to them smelled like marijuana; . . .." Here again, although Deputy Sheriff Pelletier testified that he did not detect any particular odor and could not see contraband or anything he considered to be contraband from the screen door, two other officers testified that they smelled marijuana and saw it scattered on the floor inside the house. This was competent evidence to support the challenged finding and it is conclusive on appeal.

The judge next found that the officers detected motion in the front room of the house and heard a noise of something or someone moving through the cornfield. They then entered the house searching for other suspects. Defendants object to the finding "that they searched the house finding three other defendants and additional marijuana in plain view; . . .." There is evidence that the pasteboard box of marijuana found in a back room of the house did not have a lid on it. One officer said the marijuana was "stacked in a pile protruding above the level of the box." There was evidence that another officer did not recall seeing anything sticking out above the top of the box. Conflicts in the evidence were for the trial judge to resolve.

Defendants finally object to the finding that in order to look for anyone who might have made the noise in the cornfield, two officers "proceeded outside and began to check the area, in the

process of which, Hollowell discovered in plain view marijuana in some of the out buildings; . . .." There is competent evidence to support this finding that large quantities of marijuana were seen in the barn and other outbuildings during the course of checking the area for other suspects. Officer Harper testified:

> We went outside and began looking around. Sgt. Hollowell and myself. I walked towards the back of the house and made a circle around the house. Sgt. Hollowell had walked out towards the barn. I checked around the house and started towards the barn out where Sgt. Hollowell was when he called me to the area and shined his flashlight up in the loft of the packhouse. And I shined mine there and we discussed the large amount of marijuana.
>
> . . . .
>
> . . . We had already looked in the packhouse and two grain silos. The grain silos contained large amounts of marijuana in bundles.

Defendants- argue in their brief that since a constitutional challenge confronts this Court in the case at bar, they are entitled to a careful study of the record. A detailed, careful examination of the record has been made. The findings of fact made at the suppression hearing are supported by competent evidence. Since we so hold, we also find the court did not err in denying and overruling defendants' requests for specific findings of fact.

Judge Cowper made sixteen conclusions of law, thirteen of which are challenged by defendants, either wholly or partially. In addition, defendant Sutton assigned as error conclusion of law number fourteen, but he abandoned this assignment on appeal. Defendants argue generally that the conclusions of law are in the nature of findings of fact and are not supported by the evidence. Specifically, they contend that none of the recognized exceptions to the Fourth Amendment guarantee against unreasonable searches and seizures is present in this case.

[1]   In *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, *rehearing denied*, 404 U.S. 874 (1971), the United States Supreme Court held that under certain circumstances, police may seize evidence in plain view without a search warrant. Crucial to this plain view doctrine are the necessary circumstances: The officer

must have a right to be where he is when the evidence comes into view, and he must inadvertently discover the incriminating object. A further limitation on the doctrine is dictated under *Coolidge*. Exigent circumstances must exist to justify a warrantless entry in order to seize evidence discovered in plain view.

In North Carolina a similar principle has been announced:

> "When an officer's presence at the scene is lawful (and at least if he did not anticipate finding such evidence), he may, without a warrant, seize evidence which is in plain sight and which he reasonably believes to be connected with the commission of a crime, even though the 'incident to arrest' doctrine would not apply; and such evidence is admissible."

*State v. Bagnard*, 24 N.C. App. 54, 57, 210 S.E. 2d 93, 95 (1974), *cert. denied*, 286 N.C. 416, 211 S.E. 2d 796 (1975). *See State v. Allison*, 298 N.C. 135, 257 S.E. 2d 417 (1979).

[2] Judge Cowper concluded as a matter of law that the officers were lawfully on the premises of Wood's Dairy Farm at the time they approached the house, based on his finding of fact that they went to that particular area to conduct a general inquiry and investigation. Entrance onto private property for the purpose of a general inquiry or interview is proper. *United States v. Brown*, 457 F. 2d 731 (1st Cir. 1972), *cert. denied*, 409 U.S. 843 (1972); *United States v. Knight*, 451 F. 2d 275 (5th Cir. 1971), *cert. denied*, 405 U.S. 965 (1972). Furthermore, officers are entitled to go to a door to inquire about a matter; they are not trespassers under these circumstances. *Ellison v. United States*, 206 F. 2d 476 (D.C. Cir. 1953). It was not erroneous for the judge to conclude that the officers, standing on the porch of defendants' house, were lawfully at the scene.

The judge's conclusion of law that the officers, while standing on the porch, "viewed in plain view and smelled on the inside of the house what appeared to them to be marijuana" is amply supported by his findings of fact and therefore meets the standard of appellate review.

The question remains whether the inadvertency requirement of the discovery of the evidence in plain view is met in this case. This Court recently confirmed the necessity of inadvertent observation of evidence in pointing out that the plain view exception to

the Fourth Amendment has been restricted to "instances where the officer has legal justification to be at the place where he inadvertently sees a piece of evidence in plain view." *State v. Blackwelder,* 34 N.C. App. 352, 355, 238 S.E. 2d 190, 192 (1977). Inadvertent means fortuitous, by chance. In *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968), we find: "If the officers' presence was lawful, the observation and seizure of what was then and there apparent could not in itself be unlawful." *Id.* at 202, 162 S.E. 2d at 506. The judge's finding of fact that the officers could see through the screen door and that they observed marijuana inside the house fulfills the inadvertency requirement of plain view.

This same finding of fact supports the conclusion of law "that this information, for the first time, gave rise to probable cause for the officers to search the residence in a lawful manner; . . .." Keeping in mind the warning in *Coolidge, supra,* that plain view of objects inside a house will furnish probable cause but will not, without exigent circumstances, authorize entry to seize without a warrant, we turn now to a review of the conclusion of law that "officers were confronted with exigent circumstances which required immediate action on their part to search the residence and premises not only for suspects but for more contraband; . . .."

In one of the leading cases which discuss the exigent circumstances or emergency exception, *United States v. Rubin,* 474 F. 2d 262 (3rd Cir. 1973), *cert. denied,* 414 U.S. 833 (1973), it is acknowledged that emergency circumstances may vary from case to case. Therefore, this Court must look to the record to see if, upon the facts of this particular case, the judge was correct in concluding that exigent circumstances were present. Although the judge denominated certain findings as conclusions of law, we read them as findings of fact and hold that they are supported by competent evidence and that they do support the conclusion of law that exigent circumstances were present. The relevant findings are as follows:

> 5. That the quantity of marijuana observed by the officers on the inside of the house was such that it was not improbable that the contraband could be destroyed or secreted by those desiring to do so, by whatever means, be they extreme or not, the possessors might choose;

6. That at the time the officers gained their probable cause, based upon the sounds that they heard in the area and the impressions that they had obtained from the surrounding circumstances, it was probable or reasonable for the officers to conclude that other suspects might be in the area who, under these circumstances, would present a danger to the officers' safety, would escape, or destroy the evidence if not prevented;

7. That at the time probable cause first ripened, the degree of urgency for the officers to act became immediate; that the amount of time it would have taken to get and serve a search warrant was great in that they would have had to have returned to Kinston, write out the affidavit, and return again to Wood's Dairy, taking at least one hour;

8. That the officers had reasonable grounds to believe that the possessors of this contraband were aware that the police were on their trails and in pursuit;

[3] These factual findings must also support Judge Cowper's conclusion of law that the exigent circumstances were sufficient to excuse the officers from the requirement of law to knock and announce prior to entry of the house. Defendants argue that the uncontested failure of the officers to knock on the screen door or to demand admittance before they entered the house should lead to the suppression of all evidence seized or gained by the state as a result of the alleged unconstitutional entry.

In *State v. Watson*, 19 N.C. App. 160, 198 S.E. 2d 185, *cert. denied*, 284 N.C. 124, 199 S.E. 2d 662 (1973), it was recognized that an entry which ordinarily required an announcement of purpose and demand for admittance might be proper without these procedures under special and emergency conditions: "when it reasonably appears that such an announcement and demand by the officer and the delay consequent thereto would provoke the escape of the suspect, place the officer in peril, or cause the destruction of [*sic*] disposition of critical evidence." *Id*. at 165, 198 S.E. 2d at 188. It is important to note that this principle applies when a valid search warrant is the basis for the entry. Five years later, in *State v. Brown*, 35 N.C. App. 634, 242 S.E. 2d 184 (1978), this Court held that officers were not justified in making a forcible, unannounced entry into defendant's home based on their

reasonable belief that notice of their entry would result in the destruction or hiding of evidence. In this case also, the officers acted while executing a valid search warrant. The Court stated: "In so far as *State v. Watson*, 19 N.C. App. 160, 198 S.E. 2d 185 (1973) is inconsistent with this opinion, we believe that it has been overruled by G.S. 15A-251." *Id.* at 637, 242 S.E. 2d at 187. N.C.G.S. 15A-251 governs searches made under warrants; N.C.G.S. 15A-249, which is cited within N.C.G.S. 15A-251, also governs searches under warrants. Our concern is whether in a warrantless search made under the exigent circumstances exception the same exigent circumstances may also justify the failure to knock and announce before entry.

We agree with the state's argument that they may and, in the case *sub judice*, do. It is clear from N.C.G.S. 15A-259 that the requirements of Article 11 of Chapter 15A apply only to searches made under warrants. The statute specifically provides: "Nothing in this Article is intended to alter or affect the emergency search doctrine." In addition, N.C.G.S. 15A-231 states: "Constitutionally permissible searches and seizures which are not regulated by the General Statutes of North Carolina are not prohibited." The exigent circumstances found by the trial judge, which are adequate to justify the warrantless search made by the officers in this case, are also sufficient to excuse the officers from the knock and announce requirement.

Finally, although defendants concede that Fourth Amendment protection against warrantless searches does not extend to open fields, like the field near defendants' house where marijuana stalks were discovered, *Hester v. United States*, 265 U.S. 57, 68 L.Ed. 898 (1924); *State v. Boone*, 293 N.C. 702, 239 S.E. 2d 459 (1977), they argue that evidence of the marijuana stalks should have been suppressed in accordance with the fruit of the poisonous tree doctrine, established in *Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed. 2d 441 (1963). Since we agree with Judge Cowper's conclusion that there was no illegality in the officers' search of defendants' house and premises, we find *Wong Sun* inapplicable in this case.

The denial of defendants' motions to suppress and exclude the incriminating evidence found in and around their house as the result of a warrantless search is

Affirmed.

Chief Judge MORRIS and Judge PARKER concur.