STATE OF NORTH CAROLINA v. DARIAN JAQUAN HARRIS

No. COA00-796

(Filed 21 August 2001)

1. **Criminal Law— juror's notes made during recess—mistrial denied**

    The trial court did not abuse its discretion in a cocaine prosecution by not granting defendant's motions for a mistrial or to conduct an inquiry into juror misconduct where the court

recessed on a Wednesday; there was no court on Thursday; a juror returned on Friday with a two-page typewritten document listing circumstantial factors pointing towards guilt; the juror asked the bailiff to make copies to distribute to the other jurors; the bailiff turned the document over to the court; and the court returned the document to the juror. Jurors may make notes and take them into the jury room except where the judge directs otherwise. N.C.G.S. § 15A-1228.

**2. Drugs— conspiracy to sell—sufficiency of evidence**

The trial court did not err by refusing to dismiss charges of conspiracy to sell and deliver cocaine where both defendant and an accomplice exercised some control over the hotel room where defendant was arrested, defendant had negotiated a drug deal with a detective two days earlier, there was heavy foot traffic to the room, plastic bags and a razor blade found in the room tested positive for cocaine, and the accomplice opened the door to detectives, then ran to the bathroom and flushed the toilet. There was at least a jury question as to the existence of a conspiracy.

**3. Search and Seizure— items seized during arrest in hotel room—ruse to open door—search of pager memory**

The trial court did not err in a cocaine prosecution by denying defendant's motion to suppress evidence seized during his arrest where officers called defendant's hotel room and told him that maintenance would be coming to fix a smoke detector, then knocked on the door and answered "maintenance" when asked who was there. Officers may have used a ruse to get the room door open, but the identity of the officers was immediately obvious and they did not step into the room until additional exigent circumstances arose. Defendant's pager, the numbers therein, and currency were found on defendant's person after he was arrested; the detective was entitled to search the pager's memory without a warrant because he had probable cause to believe that the pager contained information that would assist in the investigation of the crime.

Appeal by defendant from judgments entered 16 November 1999 by Judge Jerry Cash Martin in Guilford County Superior Court. Heard in the Court of Appeals 7 June 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Marvin R. Waters, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Jarvis John Edgerton, IV, for defendant-appellant.*

HUNTER, Judge.

Darian Jaquan Harris ("defendant") appeals from the judgment entered on jury verdicts finding him guilty of possession with intent to sell and deliver cocaine and conspiracy to possess with intent to sell and deliver cocaine. On appeal, defendant assigns error to the trial court's denial of his: (1) motions for a mistrial based on alleged juror misconduct, motion to conduct an inquiry into possible jury misconduct, and objection to the return of a document to a juror, (2) motions to dismiss based on insufficient evidence of conspiracy, and (3) motion to suppress evidence. After a careful review of the record and briefs, we find no error.

At trial, the State's evidence tended to show that on 16 February 1999, Detective Kyle Shearer ("Detective Shearer"), of the Greensboro Police Department, was investigating a narcotics complaint at the residence of Joyce McSwain ("McSwain") in Greensboro, North Carolina. During the consent search of McSwain's home, Detective Shearer found a piece of paper with a phone number and the name "Heavy"—who was later identified as defendant—written on it. Upon being questioned, McSwain told Detective Shearer that "Heavy" was her source of cocaine, and that "Heavy" was a fat black male, approximately 6'3" to 6'4" tall. Detective Shearer called the phone number on the slip of paper and left a numeric page with McSwain's phone number. Shortly thereafter, McSwain's phone rang, and Detective Shearer answered the phone and spoke with defendant, who represented himself as "Heavy." Detective Shearer and defendant then negotiated a drug deal to take place at McSwain's residence.

While awaiting defendant's arrival for the drug deal, McSwain received several phone calls. After approximately thirty minutes, defendant did not arrive. Detective Shearer then called defendant's pager number again, left a numeric page with his cellular phone number, received a call, recognized the voice as defendant's, and inquired as to what happened with the drug deal. During this call, defendant

**STATE v. HARRIS**

[145 N.C. App. 570 (2001)]

stated that he was not involved in the drug business, and he told Detective Shearer not to page him again.

Then two days later, on 18 February 1999, Detective Shearer dialed defendant's pager number again. This time he entered the phone numbers of two phones at the Greensboro Police Department. Within a few minutes, the two phones rang, and Detective Shearer determined from the caller ID on the phones that the calls were originating from the Extended Stay America Hotel in Greensboro, North Carolina.

Thereafter, Detective Shearer and three other detectives went to the Extended Stay America Hotel, and upon arrival, the detectives spoke with hotel personnel. Specifically, Detective Shearer indicated that some guests at the hotel might be engaged in the sale of narcotics, and he gave McSwain's description of "Heavy." The hotel employees informed the detectives that room 308 was receiving a large amount of foot traffic, and the guests were constantly using the phone. Based on this information, the detectives observed room 308 for approximately forty-five minutes. However, the detectives did not witness any suspicious activity afoot.

Consequently, Detective Shearer once again dialed defendant's pager number, left his pager number, and did not receive a response. After this failed attempt to contact defendant, Detective Shearer called the telephone in room 308, an individual answered the phone, and Detective Shearer recognized the voice as defendant's. Detective Shearer indicated that he was with the hotel's maintenance staff; there were problems with the smoke detector in the room; and a maintenance worker would be coming by room 308 shortly to repair the problem. During the call, defendant inquired as to whether there were any washing machines in the hotel.

After this conversation, the detectives went to room 308, and Detective Shearer knocked on the door. A voice from inside the room inquired as to who was there, and Detective Shearer responded, "maintenance." Brandon Martin ("Martin"), one of the occupants of the room, opened the door. When the door opened, Detective Shearer, holding his credentials in his hand, identified himself as a police officer. Upon seeing Detective Shearer, Martin reached into his pocket and started to back away. As he did so, a "baggie corner" fell out of his pocket. Detective Shearer saw the "baggie corner," as well as one other on the floor, and recognized them as a type of storage bag used for packaging narcotics. At this point, Martin ran into the

room's bathroom, and Detective Shearer entered the room to chase him. Before Detective Shearer could reach Martin, Martin was able to slam the bathroom's door shut and flush the toilet. Thereafter, Detective Shearer secured Martin in the bathroom.

While Detective Shearer was pursuing Martin, the other detectives entered room 308 and noticed two other individuals in the room. One of the individuals, defendant—"a large heavyset black male"— was standing next to a bed with his hands in his pockets. When the detectives ordered defendant to remove his hands from his pockets, defendant opened his mouth, moved his left hand to his mouth, and lunged towards the bed. Ultimately, two detectives physically subdued defendant on top of the bed, while the other detective secured another individual, Terrence Jackson, who was sitting on a second bed in the room.

Defendant, who used the false name of his brother, and Martin were arrested. Upon a subsequent search of the room, the detectives discovered large size clothes (the clothes seemed to be defendant's size, and would not fit the other two individuals in the room), three "baggie corners" with white residue, three razor blades with white residue, a box of sandwich bags, electronic scales, a pager, and a handgun under the mattress of the bed, where defendant lunged. SBI testing showed that the white residue on the "baggie corners" and razor blades tested positive for cocaine. A search of defendant's person revealed a second pager and $770.00 in United States currency. When Detective Shearer searched the memory of defendant's pager, he found his cellular phone number and the numbers of the two phones with caller ID that he used at the police station.

On 8 November 1999, defendant's case was heard during the Criminal Session of Guilford County Superior Court, the Honorable Jerry Cash Martin presiding. At the conclusion of the trial, a jury found defendant guilty of possession with intent to sell and deliver cocaine and conspiracy to possess with intent to sell and deliver cocaine. Thereafter, Judge Martin entered judgment and sentenced defendant to imprisonment. Defendant now appeals.

[1] In his first assignment of error, defendant contends that the trial court erred when it denied his motions for a mistrial based on a juror's alleged misconduct, motion to conduct an inquiry into possible jury misconduct, and objection to the return of a document to a juror. However, we find no error.

**STATE v. HARRIS**

[145 N.C. App. 570 (2001)]

Michael Boulton ("juror Boulton") was chosen as a juror for defendant's trial. At the close of all the evidence, the case was turned over to the jury, and the jury began its deliberations on Wednesday, 10 November 1999. Prior to recessing for the night, the trial court announced that there would be no court the next day (Thursday) due to a holiday, therefore court would not reconvene until Friday, 12 November 1999. Additionally, the court ordered the jurors to cease with deliberations, and "[m]ake no inquiry or investigation of your own about this matter."

Thereafter, on 12 November 1999, court reconvened and the jury returned. However, juror Boulton returned with a two-page type-written document ("document") that he created. The document was titled "Circumstantial Evidence," and it listed fourteen circumstantial factors based on trial evidence pointing towards defendant's guilt. Juror Boulton gave the document to the court bailiff, and asked if the bailiff could make copies to distribute to the other eleven jurors. Upon receipt of the document, the bailiff turned it over to the trial judge, who then showed the document to counsel for both parties.

Subsequently, defense counsel, alleging juror misconduct, made a motion for a mistrial, a motion to conduct an inquiry into possible jury misconduct, and an objection to the return of the document to juror Boulton; however, the trial court denied the motions and objection, and returned the document to juror Boulton (without copies) for use during deliberations. Specifically, the trial court ruled:

> It's a two-page document containing in the Court's view a collection of the juror's thoughts and his recollection of the evidence presented in the case. The Court does not find or infer from the contents of this document, nor from the request that was made by him that he has violated any order of the Court. There is no implication that he has continued with other jurors in deliberation, no implication by this that he has made any inquiry or investigation of his own about this. It does appear to show a juror who is very serious minded, attentive to his duty, and has continued to give thought to what is before him, and that is an important decision about whether the person is guilty or not guilty of criminal offenses.

> The Court in reviewing the matter, based on defendant's objection and motion for mistrial . . . reviews it pursuant to [N.C.

Gen. Stat. §§] 15A-1061 and 15A-1063. The Court does not find that there has occurred during the trial of this matter any error or legal defect in the proceedings or conduct inside or outside of the courtroom that would result in any substantial and irreparable prejudice to the defendant's case. . . .

After the jury returned with its verdicts, defense counsel renewed the motion for a mistrial, and the trial court denied the motion.

A trial judge "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (1999). Whether a motion for mistrial should be granted is a matter which rests in the sound discretion of the trial judge. *See State v. Blackstock*, 314 N.C. 232, 243, 333 S.E.2d 245, 252 (1985). The decision to grant or deny such a motion will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion. *See State v. McGuire*, 297 N.C. 69, 75, 254 S.E.2d 165, 169-70 (1979).

Generally, "[o]nce a jury has been impaneled, any further challenge to a juror is a matter within the trial court's sound discretion." *State v. Conaway*, 339 N.C. 487, 518, 453 S.E.2d 824, 844 (1995). Moreover:

It is well-settled law in this State that the determination of the trial court on the question of juror misconduct will be reversed only where an abuse of discretion occurred. The reason for the rule of discretion is apparent. Misconduct is determined by the facts and circumstances in each case. The trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings.

*State v. Drake*, 31 N.C. App. 187, 190, 229 S.E.2d 51, 54 (1976) (citations omitted). In other words, "[t]he determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal." *State v. Bonney*, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991).

"Where juror misconduct is alleged . . . the trial court must investigate the matter and make appropriate inquiry." *State v. Najewicz*, 112 N.C. App. 280, 291, 436 S.E.2d 132, 139 (1993) (emphasis omitted). However, there is no absolute rule that a court must hold a hear-

ing to investigate juror misconduct upon an allegation. *See State v. Harrington*, 335 N.C. 105, 115, 436 S.E.2d 235, 240-41 (1993).

> [T]he trial court has the responsibility to conduct investigations [into apparent juror misconduct], including examination of jurors *when warranted*, to determine whether any misconduct has occurred and has prejudiced the defendant. An inquiry into possible misconduct is *generally required only where there are reports indicating that some prejudicial conduct has taken place.*

*State v. Barnes*, 345 N.C. 184, 226, 481 S.E.2d 44, 67 (1997) (emphasis added).

"An examination of the juror involved in alleged misconduct is not always required, especially where the allegation is nebulous . . . ." *State v. Aldridge*, 139 N.C. App. 706, 713, 534 S.E.2d 629, 635, *disc. review denied*, 353 N.C. 382, 546 S.E.2d 114 (2000). " 'The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge.' " *State v. Johnson*, 295 N.C. 227, 234-35, 244 S.E.2d 391, 396 (1978) (quoting *Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279 (1915)). Only "[w]hen there is *substantial reason to fear* that the jury has become aware of improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial." *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991) (emphasis added).

"The presiding judge is vested with broad discretion in matters relating to the conduct of the trial. This broad discretion includes rulings with respect to making inquiry of jurors to determine whether they may have been influenced or prejudiced by any matters outside the evidence." *State v. Dial*, 122 N.C. App. 298, 308, 470 S.E.2d 84, 90, *disc. review and cert. denied*, 343 N.C. 754, 473 S.E.2d 620 (1996) (citation omitted). Allegations of juror misconduct are determined by the facts present in each case; the trial judge is in a better position to investigate such allegations and make appropriate findings. Therefore, it is well settled that the trial court's determination on the question of juror misconduct will not be reversed on appeal unless it is clearly an abuse of discretion. *Aldridge*, 139 N.C. App. 706, 713, 534 S.E.2d 629, 634; *State v. Drake*, 311 N.C. App. 187, 229 S.E.2d 51 (1976).

Accordingly, we conclude that it was in the trial court's discretion whether to conduct a hearing and inquiry of juror Boulton. While we concede that a better course of action might have been for the trial court to have conducted a *voir dire* of juror Boulton here, the trial court was by no means required to do so, and we hold that no abuse of discretion occurred, because we discern no substantial or irreparable harm to defendant's case resulting from the juror's notes. *See* N.C. Gen. Stat. § 15A-1061. Not every violation of a trial court's instruction to jurors is such prejudicial misconduct as to require a mistrial. As stated above, the notes were likely "a collection of the juror's thoughts and his recollection[s]," or in other words, his typed notes.

For similar reasons, the trial court did not err in permitting the juror to take the notes into the jury room. Pursuant to N.C. Gen. Stat. § 15A-1228 (1999), "[e]xcept where the judge, on the judge's own motion or the motion of any party, directs otherwise, jurors may make notes and take them into the jury room during their deliberations." Therefore, the trial court did not abuse its discretion in returning the document (notes) to juror Boulton for use during deliberations.

[2] Next, defendant assigns error to the denial of his motions to dismiss the charge of conspiracy to possess with intent to sell and deliver cocaine. Specifically, defendant argues that there was insufficient evidence to sustain his conviction for conspiracy. We disagree.

At the close of the State's evidence, and again at the close of all the evidence, defendant made motions to dismiss the conspiracy charge on the grounds of insufficient evidence, and the trial court denied these motions. The standard for ruling on a motion to dismiss "is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). In determining the sufficiency of the evidence, "[t]he trial court must consider such evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." *State v. Patterson*, 335 N.C. 437, 450, 439 S.E.2d 578, 585 (1994).

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citation omitted). "The conspiracy is the crime and not its execution. Therefore, no overt act is necessary to complete the crime of conspiracy. As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed." *State v. Bindyke*, 288 N.C. 608, 616, 220 S.E.2d 521, 526 (1975) (citation omitted). Furthermore, "[a] conspiracy may be shown by circumstantial evidence, or by a defendant's behavior." *State v. Choppy*, 141 N.C. App. 32, 39, 539 S.E.2d 44, 49 (2000), *disc. review denied*, 353 N.C. 384, 547 S.E.2d 817 (2001) (citation omitted). In fact, proof of a conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933). "Ordinarily the existence of a conspiracy is a jury question." *State v. Gary*, 78 N.C. App. 29, 35, 337 S.E.2d 70, 74 (1985), *disc. review denied*, 316 N.C. 197, 341 S.E.2d 586 (1986).

At trial, the State proved the crime of conspiracy based solely on circumstantial evidence. In particular, there was evidence that defendant exercised some control over the hotel room in which he was arrested. For instance, defendant answered the phone when Detective Shearer called the room; large size clothes, that seemed to fit defendant, were found in the room; and he inquired as to whether the hotel had washing machines. Also, defendant negotiated a drug deal with Detective Shearer two days before his arrest; hotel personnel informed the detectives that hotel room 308 was receiving heavy foot traffic; when defendant first saw the detectives, he moved his hand from his pocket to his mouth; and he was arrested with a pager and $770.00 in United States currency on his person.

Additionally, Martin exerted some control over the room—i.e., he opened the door to the hotel room after Detective Shearer knocked. Moreover, upon seeing the detectives, Martin ran to the room's bathroom, slammed the door, and flushed the toilet. Also, a "baggie corner" fell out of Martin's pocket; a second "baggie corner" was found on the floor; and a third "baggie corner" was found in Martin's toboggan, which was also in the room. The detectives also found three razor blades, a box of plastic bags, and electronic scales in the room;

white residue was found on the "baggie corners" and razor blades; and the white residue tested positive for cocaine. Taken in the light most favorable to the State, the evidence seems to show that there was an agreement between defendant and Martin to possess with intent to sell and deliver cocaine. Therefore, we conclude that there was at least a jury question here as to the existence of a conspiracy. Thus, the trial court did not err in submitting the charge of conspiracy to the jury.

[3] Finally, defendant assigns error to the trial court's denial of his motion to suppress evidence seized during his arrest. Particularly, defendant argues that the police officer's use of a ruse or trickery— calling and telling defendant that maintenance would come to the room to fix a smoke detector, and then, knocking on the door and answering "maintenance" when asked who was there—to get the hotel room door open was an unreasonable search and seizure in violation of his Fourth Amendment rights. Again, we find no error.

At bar, defendant, alleging federal constitutional violations, made a motion to suppress the evidence of and about his pager, the phone numbers therein, and the currency that were found on his person when arrested. Subsequently, the trial court held a suppression hearing; and at the end of the hearing, the trial court issued an order, with detailed findings of fact and conclusions of law, denying defendant's motion. Upon a review of a trial court's denial of a motion to suppress, this Court

> must determine whether the findings of fact are supported by competent evidence in the record, and whether the findings, in turn, support the ultimate conclusion of law. Because defendant does not challenge the factual findings in the order, we need only determine whether the trial court's ultimate conclusion, denying defendant's motion to suppress, was supported by the findings of fact. . . .

*State v. Milien*, 144 N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001) (citation omitted).

We recognize that an individual has both a state and federal constitutional right to freedom from unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. 1, §§ 19, 20. Generally, warrantless searches are not allowed; however, "[a] warrantless search may be conducted if 'probable cause exists to search and the exigencies of the situation make search without a warrant necessary.' "

*State v. Frazier*, 142 N.C. App. 361, 368, 542 S.E.2d 682, 688 (2001) (quoting *State v. Mills*, 104 N.C. App. 724, 730, 411 S.E.2d 193, 196 (1991)). "The reasonableness of a search, and the existence of exigent circumstances are factual determinations that must be made on a case by case basis." *State v. Johnson*, 64 N.C. App. 256, 262, 307 S.E.2d 188, 191 (1983), *remanded on other grounds*, 310 N.C. 581, 313 S.E.2d 580 (1984).

In the present case, Detective Shearer found a piece of paper with defendant's pager number at McSwain's residence; McSwain admitted that defendant was her source of cocaine and provided a description of defendant; Detective Shearer and defendant made a drug deal over the phone two days before his arrest; Detective Shearer paged defendant from two phones with caller ID, and both phones were called from the Extended Stay America Hotel; upon talking with hotel personnel, the detectives were informed that room 308 was receiving heavy foot traffic and the guests were frequently using the phone; and when Detective Shearer called room 308, defendant answered the phone. Based on the evidence, the detectives had probable cause to believe defendant was selling illegal drugs and that he was staying in room 308 of the Extended Stay America Hotel.

Moreover, we find that exigent circumstances existed here. Exigent circumstances may include such instances as where the detectives have reason to believe defendant was in the room, a delay may have led to the destruction of the controlled substances, and there was the possibility of risk to other guests in the hotel should defendant attempt to escape. *See State v. Mills*, 104 N.C. App. 724, 411 S.E.2d 193 (1991); *see also State v. Smith*, 96 N.C. App. 235, 238, 385 S.E.2d 349, 350 (1989); *State v. Prevette*, 43 N.C. App. 450, 457, 259 S.E.2d 595, 601 (1979), *appeal dismissed and review denied*, 299 N.C. 124, 261 S.E.2d 925 (1980).

"When executing a warrant, law enforcement officials are required to 'knock and announce' their presence before entering the premises unless exigent circumstances exist to justify entry without first knocking." *State v. Johnson*, 143 N.C. 307, 314, 547 S.E.2d 445, 450 (2001) (citing *Wilson v. Arkansas*, 514 U.S. 927, 131 L. Ed. 2d 976 (1995)); *see also* N.C. Gen. Stat. § 15A-249 (1999). Likewise, in a warrantless search made under exigent circumstances, the exigent circumstances may also justify the failure to "knock and announce" before entry. *See Prevette*, 43 N.C. App. 450, 455-56, 259 S.E.2d 595, 599-600.

STATE v. HARRIS

[145 N.C. App. 570 (2001)]

"The knock and announce rule has three purposes: (1) to protect law enforcement officers and household occupants from potential violence; (2) to prevent the unnecessary destruction of private property; and (3) to protect people from unnecessary intrusion into their private activities." *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (1998). "Th[at] is not to say . . . that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson v. Arkansas*, 514 U.S. at 934, 131 L. Ed. 2d at 982. As a result, the trial courts are left to "determin[e] the circumstances under which an unannounced entry is reasonable." *Id.* at 936, 131 L. Ed. 2d at 984.

In the past, this Court found no violation of the announcement requirement of the "knock and announce" rule when the defendant came to the door and police officers asked her if she knew who owned a car parked outside, and then, the officers informed the defendant that they were police officers and had a search warrant. *See State v. Tate and State v. Tate*, 58 N.C. App. 494, 500, 294 S.E.2d 16, 20 (1982). However, for guidance, we look to the case law of other jurisdictions that have more thoroughly dealt with this issue of police ruse and trickery.

In both Kentucky and Wisconsin, the courts found that the police officers' ruse of calling out "pizza" and "pizza delivery," after the officers knocked on the door, did not violate the announcement requirement of the "knock and announce" rule, as the ruse successfully enticed the defendant to voluntarily open the door, the officers then announced themselves as police officers, and they gained peaceful entry. *See Adcock v. Commonwealth*, 967 S.W.2d 6; *see also State v. Moss*, 166 Wis.2d 733, 480 N.W.2d 526 (1992). Additionally, in Hawaii, the state Supreme Court held that the use of a police ruse violated neither state nor federal constitutional law, because the purposes of the "knock and announce" rule were not frustrated. *See State v. Dixon*, 83 Hawaii 13, 924 P.2d 181 (1996) (police officers sent a hotel security guard to defendant's hotel room, while they waited outside the door; the security guard knocked on the door and informed the occupants that he was there to check the air-conditioning; when the door opened, the officers announced themselves and entered the room).

We note that the use of deception (ruses, trickery, etc.) by law enforcement officials, in other contexts, is sometimes necessary and

is not always unconstitutional, i.e., undercover officers and inform-ants. *See Maryland v. Macon*, 472 U.S. 463, 470, 86 L. Ed. 2d 370, 377 (1985) ("[t]he use of undercover officers is essential to the enforce-ment of vice laws"); *see also Arizona v. Fulminante*, 499 U.S. 279, 306, 113 L. Ed. 2d 302, 329 (1991) ("the use of informants in the dis-covery of evidence of a crime [i]s a legitimate investigatory proce-dure consistent with the Constitution"). Therefore, if we were to find the use of ruses and trickery illegal here, then there could be no use of undercover officers or informants by law enforcement officials in any context.

In the case *sub judice*, we further note that the police officers did knock and use a ruse to get the hotel room door open, however, the officers did not enter the room based on the ruse. In fact, once the door was voluntarily opened, the ruse was no longer necessary, and Detective Shearer, holding his credentials, identified himself as a police officer. Then, before the officers could take any further action, Martin started backing away from the door; Detective Shearer observed two "baggie corners" in plain view, one falling from Martin's pocket; it was apparent to Detective Shearer that the items were evi-dence of a crime or contraband; and Martin hurried to the room's bathroom. This series of events gave rise to additional exigent cir-cumstances warranting the detectives' entry into the room—to avoid the destruction of evidence and Martin's possible obtaining of a weapon in the bathroom.

Thus, probable cause and exigent circumstances existed suffi-cient to conduct a warrantless search of the hotel room. Once the door was open, the identity of the detectives was immediately obvi-ous from Detective Shearer's credentials and announcement, and the detectives did not step into the hotel room until additional exigent circumstances arose. Therefore, we hold that the detectives' use of a ruse to get the hotel room door voluntarily opened did not frustrate the purposes of the "knock and announce" rule, and was not an unreasonable search under the Fourth Amendment.

As to defendant's pager, the numbers therein, and currency, those items were found on defendant's person after he was arrested and handcuffed. " ' "In the course of [a] search [incident to arrest], the officer may lawfully take from the person arrested any property which such person has about him and which is connected with the crime charged or which may be required as evidence thereof." ' " *State v. Goode*, 350 N.C. 247, 255-56, 512 S.E.2d 414, 419 (1999) (quot-ing *State v. Harris*, 279 N.C. 307, 310, 182 S.E.2d 364, 366-67 (1971))

(quoting *State v. Roberts*, 276 N.C. 98, 102, 171 S.E.2d 440, 443 (1970)). Furthermore, as to the numbers in the pager's memory, Detective Shearer had probable cause to believe that the pager contained information that would assist in the investigation of the crime; hence, he was entitled to search the numbers in the pager's memory without a warrant. *See State v. Wise*, 117 N.C. App. 105, 107, 449 S.E.2d 774, 775-76 (1994). Accordingly, we find that the trial court's ultimate conclusion was supported by its findings of fact; thus, we hold that the trial court properly denied defendant's motion to suppress.

In light of the foregoing, we hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges MARTIN and HUDSON concur.