STATE v. CORDELL HULL McPEAK AND LELAND WESLEY CAMPBELL.

(Filed 14 December, 1955.)

**1. Constitutional Law § 40: Searches and Seizures § 1—**

A person may waive his right to be free from unreasonable searches and seizures, and if it clearly appears that he voluntarily consented, or permitted, or expressly invited or agreed to the search, it constitutes such waiver. Constitution of North Carolina, Art. I, sec. 11; 14th Amendment to the Federal Constitution; G.S. 15-27.

**2. Same: Criminal Law § 43—Evidence held to support finding that owner consented to search of car.**

Evidence to the effect that a highway patrolman stopped a car for a routine check, that the patrolman, having his suspicions aroused, stated that he would like to search the car but that the driver-owner did not have to permit the search if he did not want to, that the owner then unlocked the trunk, unzipped a leather case and stated that he did not have anything, and that the officer saw a sledge hammer in the trunk and searched the car, finding burglar's tools and narcotics, *is held* to make out a *prima facie* case that the owner freely and voluntarily consented to the search, and to sustain the court's finding of a waiver, it being incumbent upon the owner if he wished to dispute the fact of waiver to offer some proof controverting the showing made by the State, and the admission in evidence of the implements and narcotics found was without error.

**3. Same—**

Immunity to unreasonable searches and seizures is a privilege personal to those whose rights thereunder have been infringed, and therefore a guest or passenger in a car has no ground for objection to the search of the car by peace officers.

APPEAL by defendants from *Johnston, J.,* February Term 1955 of SURRY.

Criminal prosecution upon two separate, identical bills of indictment against each defendant: the first bill of indictment charges the felonious possession, without lawful excuse, of implements of housebreaking, as prohibited by G.S. 14-55; the second bill of indictment charges in four counts the felonious possession and transportation in an automobile of narcotic drugs, as condemned by G.S. 90-88 and G.S. 90-111.2.

The defendants pleaded not guilty. Their cases were consolidated for trial.

This is the story portrayed by the State's evidence: the defendants offered no evidence. Between 8:30 and 9:00 p.m. on 1 February 1955, the defendant McPeak was driving an Oldsmobile car with Florida license tags on a public road near Mount Airy. The defendant Campbell was in the rear seat, and Ray Hemmings was in the front seat with McPeak. State Highway Patrolman J. B. Howell, with two Deputy Sheriffs of Surry County in his car, was on duty patrolling the highway, and stopped the Oldsmobile for a routine check. Howell got out of his car, walked to the Oldsmobile, and asked McPeak for his driving license and registration card. McPeak gave him a Florida license and registration card in the name of James W. Taylor. Howell took the license and registration card, walked to the rear of the Oldsmobile, and checked the license number. McPeak got out of the car. He said it was his car. Howell saw a file in McPeak's coat pocket. He asked McPeak, if he had ever been tried on a narcotics charge. McPeak replied No.

Howell told McPeak he would like to search his car, but "he didn't have to let us search his car if he didn't want to." McPeak said, "Well, there's nothing on the car," walked back to his car, took the switch key out, walked to the rear, and unlocked the trunk. McPeak unzipped a leather case he had in the trunk, fumbled through some articles of clothing in it, and said: "See, I don't have anything." At that time Howell saw a five or six-pound sledge hammer in the trunk of the car.

Howell then searched the Oldsmobile. He found in it 597 Dolophine Hydrochloride Tablets in bottles labeled 5 to 7.5 millograms, 1749 Codeine Sulphate Tablets in bottles labeled ⅛ to 1 grain, 140 Mercodinone Tablets labeled 05 millogram, 78 Morphine Sulphate Tablets labeled ½ grain, 2 bottles containing tablets labeled Dilaudid Hydrochloride, 100 Hypodermic Tablets in tubes of 20 labeled Hyocine, Morphine and Cactus and 6 Dilaudid Hydrochloride suppositories. Dr. Haywood M. Taylor, a bio-chemist and toxicologist at Duke University, testified the Codeine Sulphate Tablets, the Morphine Sulphate Tablets and the Dolophine Hydrochloride Tablets found in the Oldsmobile are narcotic drugs. There is no evidence in the Record, as to whether the other drugs found are narcotics or not. Howell found in the leather case McPeak unzipped a bottle of nitro-glycerine, a bar of soap wrapped in a wet washcloth and some dynamite caps with short fuses attached. He also found in the car a steel bar, two metal socket wrench extensions, a piece of wire with two clamps on it, a screwdriver and aluminum foil.

McPeak told L. E. Williams, an agent of the State Bureau of Investigation, the following: Campbell came to his home in Jacksonville, Florida, about 10 days before, and brought a bottle of nitro-glycerine and dynamite caps and fuse connections. They decided to make a trip,

and see what "they could spot." They left Florida on 31 January, and reached Mount Airy on 1 February. They went to the home of Ray Hemmings. McPeak said he used the socket wrench extension to punch safes, because it could not be called a burglar's tool. He had never done any jobs in North Carolina, because of "the tool statute."

Campbell made the following statement to L. E. Williams: He and McPeak met in Bowling Green, Kentucky, and decided to go off somewhere, and make some money cracking safes. McPeak was the punch man, and he used nitro-glycerine. He bought some fuses and things en route. He extracted the nitro-glycerine from dynamite. En route McPeak bought the sledge hammer and the socket wrench extension.

Verdict as to each defendant: Guilty of possessing burglary tools, and guilty of violating the narcotics law.

Judgment as to each defendant: imprisonment for 15 years on the charge of possession of implements of housebreaking, and imprisonment for five years for violating the narcotics law: the five-year sentence to run concurrently with the 15-year sentence.

Both defendants appeal, assigning error.

*William B. Rodman, Jr., Attorney General, and Harry W. McGalliard, Assistant Attorney General, for the State.*

*Woltz & Woltz, J. N. Freeman and T. M. Faw, Frank Freeman for Defendants, Appellants.*

PARKER, J. The defendants' assignments of error present one question for decision: Were the implements of housebreaking and the narcotic drugs found in McPeak's automobile admitted in evidence in violation of the provisions of G.S. 15-27, Article 1, Section 11, of the State Constitution and the 14th Amendment to the U. S. Constitution?

It is well settled law that a person may waive his right to be free from unreasonable searches and seizures. A consent to search will constitute such a waiver, only if it clearly appears that the person voluntarily consented, or permitted, or expressly invited and agreed to the search. Where the person voluntarily consents to the search, he cannot be heard to complain that his constitutional and statutory rights were violated. *S. v. Moore*, 240 N.C. 749, 83 S.E. 2d 912 (where many cases are cited) ; *Zap v. U. S.*, 328 U.S. 624, 90 L. Ed. 1477; *People v. Preston*, 341 Ill. 407, 173 N.E. 383; 77 A.L.R. 631; 47 Am. Jur., Searches and Seizures, Sec. 71; 79 C.J.S., Searches and Seizures, Sec. 62.

"No rule of public policy forbids its waiver." *Manchester Press Club v. State Liquor Com.*, 89 N.H. 442, 200 A. 407, 116 A.L.R. 1093.

The facts in *Sims v. State*, 73 Okl. Cr. 321, 121 P. 2d 317, are quite similar. The first headnote reads: "Where motorist, on request of

STATE v. McPEAK.

highway patrolmen who stopped him for driving contrary to rules of the road, opened turtleback of automobile, disclosing whiskey, there was a 'waiver' by motorist of immunity from unlawful search."

In the case at bar there was no display of force or firearms, no promises, no threats, no coercion of any kind. Howell told McPeak he would like to search his car, but he told him "he didn't have to let us search his car, if he didn't want to." McPeak said, "Well, there's nothing on the car," got his switch key, unlocked the car's trunk, raised the lid, unzipped a leather bag or case (it is called by both names in the evidence) he had in there, fumbled through some articles of clothing in the bag, and said, "See, I don't have anything." At that time the officer saw a five or six-pound sledge hammer lying in the trunk of the car. In the search the officer found in the bag McPeak unzipped a bottle of nitro-glycerine, some dynamite caps with short fuses attached, and a bar of soap wrapped up in a wet washcloth. The State having introduced evidence sufficient, *prima facie,* to show a waiver, if McPeak wished to dispute the fact of waiver, he should have offered some proof controverting the showing made by the State. *Jones v. State,* 33 Okl. Cr. 369, 244 P. 456. He failed to do so. We conclude that the acts and language of McPeak constituted a free and voluntary consent on his part to the search of his automobile by the officer, and a waiver on his part of his immunity from an unlawful search.

The lower court found as a fact that McPeak gave permission to the officer to search his car, that it was a legal search, that the evidence was competent, and overruled the motion "to suppress all evidence obtained through the search." The ruling of the trial judge as to the competency of this evidence, which is supported by competent evidence, will not be disturbed on appeal. *S. v. Moore, supra.*

The Oldsmobile was the property of McPeak and in his possession. Campbell was a passenger therein. The person of Campbell was not searched.

The immunity to unreasonable searches and seizures is a privilege personal to those whose rights thereunder have been infringed. They alone may invoke it against illegal searches and seizures. *Goldstein v. U. S.,* 316 U.S. 114, 86 L. Ed. 1312; *Kelley v. U. S.,* 61 F. 2d 843, 86 A.L.R. 338; *U. S. v. DeVasto,* 52 F. 2d 26, 78 A.L.R. 336; *Steeber v. U. S.,* 198 F. 2d 615, 33 A.L.R. 2d 1425; 79 C.J.S., Searches and Seizures, Sec. 52, where numerous cases are cited from many jurisdictions; 47 Am. Jur., Searches and Seizures, Sec. 11.

The Oldsmobile belonged to McPeak: Campbell was a passenger or guest therein. Campbell's rights were not invaded by the search of McPeak's car, and he had no legal right to object thereto. *Smith v.*

*State,* 198 Miss. 788, 24 So. 2d 85; *Lee v. State* 148 Tex. Cr. 220, 185 S.W. 2d 978; *Anderson v. Commonwealth,* 312 Ky. 768, 229 S.W. 2d 756.

In *Lee v. State, supra,* a state highway patrolman arrested Lee on a highway about 12 miles west of Fort Worth; at the time of Lee's arrest he was riding with a man who was going to Fort Worth; the officer searched the car without a search warrant, and found an automatic pistol under the seat where Lee was riding. This pistol was used to commit the murder with which Lee was charged. It was admitted in evidence. Lee objected to any evidence of the search and the result thereof, because the search was made without a search warrant. The Texas Court said we see no merit in the objection for two reasons: "First, the automobile did not belong to appellant. Consequently his rights were not invaded by the search and he had no legal right to object thereto, (citing authorities). Second, the officer who made the arrest had theretofore been advised that appellant had committed a felony and was fleeing. Hence the officer had a legal right, under article 215, C.C.P., to arrest the appellant without a warrant, and the arrest carried with it the right to search him."

The cases cited by the appellants are distinguishable.

The evidence challenged by the appellants was admissible against both defendants. In the trial below we find

No error.