STATE OF NORTH CAROLINA v. YOULES JOHNSON, JR.

No. 536A83

(Filed 3 April 1984)

**Searches and Seizures § 10— warrantless entry and seizure—exigent circumstances—insufficient evidence and findings**

> In a prosecution for felonious possession of heroin wherein the evidence and findings upon a motion to suppress showed that officers had warrants for the arrest of two fugitives, one male and the other female; the officers had been informed and, at some point, had probable cause to believe that the fugitives were at defendant's house; when officers approached defendant's house with the arrest warrants, there were six persons standing in the driveway area, and one female began to run to the rear of defendant's house; the officer pursued such female because he suspected that she might be the female fugitive; and while in "hot pursuit" of the female, the officer went through the rear door and into the den of defendant's house, where he saw packets containing heroin, it was *held* that the evidence and findings did not support the conclusion of the Court of Appeals that there was an unjustified delay or failure to obtain a search warrant after the existence of probable cause as to the whereabouts of the fugitives so that the officer's warrantless entry into defendant's house and his seizure of the heroin was not justified by exigent circumstances where there was no evidence or findings concerning (1) the circumstances surrounding verification by the officers that the fugitives were at defendant's house and when officers had probable cause to believe that the fugitives were at such house, and (2) the officers' intent in going to defendant's residence other than the intent to arrest the fugitives. Therefore, the case will be remanded for further evidence, findings and conclusions.

ON appeal from decision of the Court of Appeals, 64 N.C. App. 256, 307 S.E. 2d 188 (1983), which reversed the judgment of *Hobgood, Judge,* entered at the 16 February 1982 Session of CUMBERLAND County Superior Court.

Defendant was charged in an indictment, proper in form, with felonious possession of more than 14 but less than 28 grams of heroin. Defendant entered a plea of not guilty.

The State's case rested primarily upon evidence of a quantity of heroin seized at defendant's residence. Prior to trial, defendant moved to suppress the seized evidence. After hearing evidence and arguments of counsel on 6 August 1981, Judge Winberry entered the following order on 9 February 1982:

> That the parties hereto stipulated that the residence located at 1605 Grandview Drive, Fayetteville, North Caro-

lina, is owned and occupied by the Defendant, Youles Johnson, Jr.

That J. D. Bowser is a Deputy Sheriff assigned to the City/County Bureau of Narcotics and that he has known the Defendant, Youles Johnson, Jr. for approximately 1-½ years and knew that he resided at 1605 Grandview Drive, Fayetteville, North Carolina.

That about noon on Wednesday, September 17, 1980, Deputy Bowser was contacted by a Bondsman named Collins from Wake County. That Mr. Collins provided Deputy Bowser with certified copies of arrest warrants from Wake County for two (2) persons, Edith Mae Williams and John Wortham. That the arrest warrants for Williams and Wortham were for failure to appear upon charges of possession of heroin and possession of phenmetrazine. That, additionally, there were warrants for Wortham for assault on a Police Officer by firing a gun and for being an habitual felon.

That the Bondsman, Collins, requested assistance from Deputy Bowser in apprehending Williams and Wortham and advised Deputy Bowser that he had reliable information that both Williams and Wortham were at 1605 Grandview Drive at that time. That Deputy Bowser and Sgt. Baker of the City/County Narcotics Bureau verified the information received from Mr. Collins by placing various telephone calls and by Sgt. Baker going to the area of 1605 Grandview Drive.

That Mr. Collins provided Deputy Bowser with a photograph showing the head and face of a black female said to be Edith Mae Williams and with a photograph showing the head and face of a black male said to be John Wortham. That Deputy Bowser received no other description of Williams and Wortham.

That, at approximately 3:45 p.m., Deputy Bowser in an unmarked car accompanied by uniformed officers in marked patrol cars, went to the residence at 1605 Grandview Drive. That Mr. Collins was not with Deputy Bowser at this time. Upon his arrival, Deputy Bowser observed approximately six (6) people standing in the driveway area of the house. These

people consisted of several black males and several black females. Deputy Bowser was approximately six feet from the nearest person when his car was brought to a halt and he got out. That the marked patrol cars also came to halt.

That as soon as he got out of his car, he observed a black female begin to run toward the rear of the residence. Deputy Bowser began to pursue her because he thought she might be Edith Mae Williams. As Deputy Bowser ran behind her into the back yard, he identified himself as a police officer and ordered her to halt by calling out, "police, halt." That Deputy Bowser hollered, "halt, police officer," several times as he ran. That the black female did not halt, but proceeded into the back yard of the residence and ran through the back door into the house. That Deputy Bowser was approximately ten feet behind her and followed her into the house, through a utility room and into the den area of the house where she stopped. That there were two (2) black females and two (2) black males also in the den.

That Officer Bowser saw a tinfoil packet on the floor with a white powdery substance spilling out of it. Near the black female he had followed into the house, Deputy Bowser observed a clear plastic packet containing white powder and another tinfoil packet containing white powder. That one of the black females in the room which Deputy Bowser entered was Edith Mae Williams. That the black female who ran into the house turned out to be Ruby Wright. That Deputy Bowser determined that Edith Mae Williams weighed approximately 200 pounds and was approximately 5½ feet tall. That Ruby Wright weighs approximately 140 pounds and is 5'7" tall.

That Deputy Bowser did not have a search warrant to search the residence of Youles Johnson, Jr. for Edith Mae Williams and John Wortham. That no one gave Deputy Bowser permission to enter the residence.

BASED UPON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW:

(1) That Deputy Bowser had probable cause to believe that Edith Mae Williams and John Wortham were located at the residence at 1605 Grandview Drive.

(2) That under all the circumstances as appeared to him at the time, and particularly in light of the meager descriptions provided of Williams and Wortham and the nature of the assault charges against Wortham, Deputy Bowser acted reasonably in pursuing the black female into the back yard and into the house. That exigent circumstances existed which justified Deputy Bowser's entry into the residence at 1605 Grandview Drive, even though he had no search warrant for the residence.

(3) That the discovery of a controlled substance in the residence at 1605 Grandview Drive was inadvertent.

(4) That the Defendant's rights under the Constitution of the United States, and the Constitution of the State of North Carolina and the General Statutes of North Carolina were not violated.

Therefore, the Defendant's Motion to Suppress is denied.

At trial, Officers J. D. Bowser and Roy Baker testified for the State and related the circumstances surrounding the seizure of the evidence in substantial conformity with the facts as found by Judge Winberry upon the motion to suppress. The jury returned a verdict of guilty and defendant was sentenced to imprisonment for a minimum term of 12 years and a maximum term of 15 years. Defendant was also fined one hundred thousand dollars.

Upon appeal, the Court of Appeals in an opinion by Judge Johnson, with Judge Braswell concurring, reversed the judgment on the ground that the seizure of the evidence from defendant's residence in this case violated defendant's fourth amendment rights. Judge Hedrick dissented, and the State appealed to this Court as a matter of right pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by Henry T. Rosser, Assistant Attorney General, for the State appellant.*

*Brown, Fox & Deaver, P.A., by Bobby G. Deaver, for defendant appellee.*

BRANCH, Chief Justice.

The sole issue presented for review is whether the seizure of heroin under the circumstances of this case violated defendant's fourth amendment rights. Defendant contends that the officer's warrantless entry into his home, without consent and without any accompanying exigent circumstances, was barred by the mandates of the fourth amendment as set forth in *Steagald v. United States*, 451 U.S. 204 (1981) and *Payton v. New York*, 445 U.S. 573 (1980). The State, on the other hand, maintains that the officer entered defendant's home while engaged in "hot pursuit" of a fugitive and thus the entry was justified under the exigent circumstances exception to the fourth amendment warrant requirement. Consequently, the State argues that the seizure of the heroin constituted the seizure of evidence in "plain view" of an officer who was lawfully inside the residence. *See State v. Allison*, 298 N.C. 135, 257 S.E. 2d 417 (1979).

The fourth amendment prohibits the entry into a home in order to make a felony arrest, absent a valid search warrant, consent or exigent circumstances. *Steagald v. United States*, 451 U.S. 204 (1981); *Payton v. New York*, 445 U.S. 573 (1980). In the instant case, the officers were armed with warrants for the arrest of two fugitives. The officers had been informed and, at some point, presumably had probable cause to believe these fugitives to be at defendant's home. The United States Supreme Court in *Steagald* clearly held that, absent exigent circumstances or consent, a search warrant was required before officers could enter the residence of a third person to arrest a suspect. *Steagald v. United States*, 451 U.S. 204.

There is no question in this case that there was neither a search warrant nor consent to enter defendant's home. Thus, the sole question is whether the entry and its concomitant seizure were accompanied by such exigency as to have rendered it impracticable for the officers to have obtained a search warrant.

In *State v. Allison*, 298 N.C. 135, 257 S.E. 2d 417 (1979), we noted that a warrantless search may be justified upon a showing that there is probable cause to search and upon the State's satisfying its "burden of demonstrating that the exigencies of the situation made search without a warrant imperative." *Id.* at 141, 257 S.E. 2d at 421.

Facts and circumstances sufficient to constitute "exigent circumstances" in the context of fourth amendment searches vary widely and have been the subject of a significant number of cases. *See State v. Allison,* 298 N.C. 135, 257 S.E. 2d 417 (1979). *See e.g., United States v. Santana,* 427 U.S. 38 (1976); *United States v. Minick,* 455 A. 2d 874 (D.C. App. 1983) (en banc); *Dorman v. United States,* 435 F. 2d 385 (D.C. App. 1970) (en banc).

Despite the numerous fact situations giving rise to the characterization of "exigency," it appears to be the essence of "exigent circumstances" that there was "the lack of time to obtain a warrant without thwarting the arrest or making it more dangerous. *Where time was adequate, failure to obtain a warrant should not be excused."* Latzer, Enforcement Workshop: Police Entries to Arrest—*Payton v. New York,* 17 Crim. L. Bull. 156, 165 (1981) (emphasis added). Thus, while in this case, it is evident that, at the time of entry into defendant's home, Officer Bowser was engaged in the "hot pursuit" of a person he suspected to be a fugitive, the issue remains as to whether there was an unjustified delay or failure to obtain a search warrant after the existence of probable cause as to the whereabouts of the suspects.

The Court of Appeals in this case construed the facts surrounding the warrantless entry to be as follows:

From the record here, it is apparent that over three and a half hours elapsed between the time that the police were supplied with arrest warrants and the time the arrest was made. Although copies of the warrants are not in the record, it appears that the police were supplied at the same time with the information that the person named in the arrest warrants could be found at defendant's home. Officer Bowser testified that he had received information from the bondsman, Sgt. Baker and several other sources that Williams and Wortham were located at defendant's residence; that he knew defendant and knew his address and that his specific purpose in going to defendant's residence was to arrest Williams and Wortham. From the time the warrants were received until they were executed, no attempt was made to procure a warrant authorizing entry into defendant's house. Thus, it would appear that the arrest raid was in fact a planned raid. There was ample time to secure a search war-

rant and ample reason to anticipate the need for one. That the subject of the arrest warrants were believed to be at defendant's house is sufficient by itself to put the police on notice that they might need to gain entry to the house in order to effect the arrest. With these facts in mind, we need not consider whether Officer Bowser was in "hot pursuit" and whether that alone was sufficient to justify his entry into defendant's home. The need for a search warrant should have been anticipated in this case.

64 N.C. App. at 263, 307 S.E. 2d at 192.

While we do not disagree with the Court of Appeals' recapitulation of certain facts as found by the trial judge, we do take issue with some of the conclusions that the court drew. In our opinion, the *voir dire* evidence and the trial judge's findings are insufficient to permit adequate review by the appellate courts.

For example, it is clear from the record that "over three and a half hours elapsed between the time that the police were supplied with arrest warrants and the time the arrest was made." 64 N.C. App. at 263, 307 S.E. 2d at 192. It is also undisputed that the bondsman informed Officer Bowser that "he had a confidential source which had furnished him with information to the fact that they were at that residence." (Transcript of *voir dire* hearing 11.)[1] In addition, Officer Bowser testified that he and Sergeant Baker "attempted to verify the information that [they] had received from Mr. Collins through telephone calls, [and] through Sergeant Baker going out to the area where the residence is." (Transcript of *voir dire* hearing 14.) However, we do not believe that the evidence of findings of fact are sufficient to support the Court of Appeals' conclusion that "it would appear that the arrest raid was in fact a planned raid." 64 N.C. App. at 263, 307 S.E. 2d at 192. We likewise do not believe the evidence or findings are sufficient to support the conclusion that "[t]here was ample time to secure a

---

1. Despite the fact that the sole issue in this case involved a review of the trial judge's order denying defendant's motion to suppress, neither party saw fit to include in the record a transcript of the *voir dire* hearing. Consequently, this Court was constrained to contact the District Attorney's Office in Cumberland County in order to complete the record in this regard. It is inconceivable that litigants expect the appellate courts to conduct effective review without the benefit of a complete record.

search warrant and ample reason to anticipate the need for one." Finally, we believe that the evidence and findings are insufficient to support the conclusion by the Court of Appeals that, "[t]he need for a search warrant should have been anticipated in this case." *Id.*

From the testimony of Officer Bowser at the *voir dire* hearing, and likewise from the findings of the trial judge, there is little upon which the conclusions drawn by the Court of Appeals can rest. There is no finding as to when the officers had probable cause to believe that the suspects were indeed at the home of the defendant. The Court of Appeals assumed probable cause existed when the bondsman informed the officers that he had reliable information to that effect. However, the testimony of Officer Bowser that he and Sergeant Baker proceeded to verify that information could just as reasonably lead to the conclusion that the existence of probable cause was dependent upon that verification. Depending upon the time required to obtain verification, the officers likely did not have a full "three and a half hours" between the time they had probable cause to believe the suspects to be at defendant's home, and the time at which they arrived there. In addition to there being no evidence with respect to the time it took to verify the suspects' whereabouts, there is no evidence as to the circumstances surrounding the verification. For example, no testimony was elicited showing the manner in which Sergeant Baker verified the information; whether, at the time of verification, the suspects were inside or outside defendant's house; whether Baker radioed the information to the police station; or the whereabouts of the other officers when they received word of verification. Absent, too, are any findings regarding the officers' intent in going to the residence other than the intent to arrest the suspects. It is conceivable that, had the officers intended to stake out the residence and at the same time seek a search warrant, their actions might be deemed "reasonable" within the meaning of the fourth amendment.

The determinations necessary for our review of the legality of the instant search simply cannot be made upon the findings and conclusions contained in Judge Winberry's order. Were we to attempt to uphold or condemn the search, we would be engaging in mere speculation.

The lack of sufficient findings in this case, as well as the lack of evidence in the transcript upon which to base any findings, compels us to remand the case for new *voir dire* proceedings consistent with this opinion. *See State v. Booker*, 306 N.C. 302, 293 S.E. 2d 78 (1982). Upon its determination, the superior court shall enter its findings, conclusions, and order which shall be certified to this Court. The parties may file exceptions and assignments of error to the order, if applicable, and may file additional briefs with this Court, if deemed appropriate by them. *See State v. Prevette*, 39 N.C. App. 470, 250 S.E. 2d 682, *appeal dismissed,* 297 N.C. 179 (1979).

Remanded.