STATE OF NORTH CAROLINA v. HAZEL MAE JOLLEY

No. 8329SC895

(Filed 17 April 1984)

**Searches and Seizures § 10— failure to suppress shotgun—no evidence of exigent circumstances or consent—error to deny motion to suppress**

> In a prosecution for second degree murder, the trial court erred in failing to suppress evidence of a gun obtained without a warrant where there was neither evidence of exigent circumstances nor evidence of consent.

Judge BRASWELL dissenting.

APPEAL by defendant from *Brown, Judge.* Judgment entered 26 May 1983 in RUTHERFORD County Superior Court. Heard in the Court of Appeals 15 February 1984.

Evidence offered at trial tended to show the following pertinent facts. On 28 December 1982 John Jolley, Sr., died as a result of multiple gunshot wounds. Rutherford County Deputy Sheriff Mike Summers, responding to a call for help, found Jolley lying on the floor in his home being attended by emergency medical technicians. He also found defendant, Jolley's widow, crouched beside the kitchen bar crying. He observed a gun similar to that later introduced as state's exhibit number one in the den. He did not examine or seize the gun or make a positive identification of it at trial.

Shortly after arriving, Deputy Summers placed defendant in his patrol car and advised her of her *Miranda* rights. Jolley's body was removed from the house and Deputy Summers "roped off" the crime scene. Shortly thereafter Detective Philbeck arrived and Summers informed him that he was unsure whether the shooting was a homicide or accidental. Mrs. Jolley was taken to jail. No other member of the defendant's family was present at the house.

Without seeking consent and without obtaining a search warrant, Detective Philbeck conducted a six hour search of the home. During this search he confiscated a semi-automatic .22 caliber rifle and several spent shell cases. The items were introduced at trial over defendant's objection.

At the Rutherford County jail, defendant gave a statement indicating that the shooting was accidental. Later that evening

Detective Simmons disassembled the seized rifle. The rifle was then reassembled and tested by firing one bullet. Based upon his examination and testing of the rifle Detective Simmons was allowed to give his opinion at trial that the weapon was functioning properly. An S.B.I. agent who later examined the weapon was allowed to testify that, based upon his examination of the weapon, it was functioning properly.

Defendant, testifying in her own defense, presented evidence which tended to show the following facts and events. On 28 December 1982, her husband was resting on the sofa in their house, and defendant was going out shopping and decided to buy some new bullets for the gun. The gun was loaded because some time prior to this her daughter's estranged husband had come to the house and tried to cause trouble. On that occasion the daughter pointed the gun at her husband, but he took it away from her and threw it to the ground, damaging it. Defendant's son repaired the gun, and told defendant that the bullets needed to be replaced. While defendant was carrying the gun to the kitchen to determine what type bullets were needed, the gun discharged, striking her husband. Defendant also offered testimony from expert witnesses who stated that multiple discharges were common with these type weapons and that they should be tested in a controlled environment before they were disassembled and then reassembled.

Defendant was convicted of second degree murder and from a judgment sentencing her to imprisonment for a term of ten years she appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Hamrick, Bowen, Nanney & Dalton, by Walter H. Dalton, for defendant.*

WELLS, Judge.

In her second assignment of error defendant contends the court erred in denying her motion to suppress the state's exhibit number one, a J. C. Higgins .22 semi-automatic rifle, on the grounds that the gun was obtained as a result of an illegal search and seizure. We agree and grant defendant a new trial.

On 20 April 1983, defendant filed a motion to suppress alleging, *inter alia*:

The grounds for the suppression of this evidence are as follows:

(a) Its exclusion is required by the Constitution of the United States or the Constitution of North Carolina in that it resulted from an unreasonable search and seizure and in addition, it was obtained as a result of a substantial violation of the provisions of Chapter 15A of the General Statutes in that the sworn testimony of the officers involved at the probable cause hearing clearly show that the defendant was arrested at her home on December 28, 1982 and was taken to the Rutherford County Jail; thereafter, other officers proceeded to her residence without the authority of a search warrant and under no recognized exception to the requirement of a search warrant and entered the defendant's premises without the consent of the defendant and without her being present and in violation of law and thereafter, seized the .22 rifle, J. C. Higgins model, which the defendant now seeks to suppress, together with any test results relating to said rifle; that said intrusion into the defendant's home without the authority of a search warrant was unlawful and a substantial violation of her rights and in violation of the Fourth Amendment of the United States Constitution and in violation of Chapter 15A of the North Carolina General Statutes.

Following a hearing on the motion the trial court made the following pertinent findings of fact and conclusions of law:

That on December 28, 1982 at 3:00 p.m., Deputy Michael Summers of the Rutherford County Sheriff's Department went to the home of John Preston Jolley and Hazel Mae Jolley to investigate a possible shooting; that he found John Jolley in the den on the floor and EMT personnel were working on him.

That he saw a .22 rifle in a chair in the den area.

That the Defendant, Hazel Mae Jolley, was in the kitchen area in a squatting position.

That Summers asked her to sit in the patrol car, that he thought getting her out of the house would help her emo-

tional state, that he thereafter helped rope the area off to secure the scene, that he spoke with the defendant in his patrol [car] and advised her of her rights, on a form used by the Rutherford County Sheriff's Department.

. . .

That Detective David Philbeck had arrived at the Jolley residence about five minutes after 3:00, and Summers turned control of the premises over to him.

That Philbeck went inside the residence where he made photographs, seized the rifle, spent cartridges, a lead fragment, made a diagram, and visually observed the premises.

. . .

From the foregoing findings of fact the Court concludes:

1. That a search warrant was not required for Detective Philbeck to enter the Jolley home and conduct an investigation of the shooting of John Preston Jolley; and that the evidence seized is competent and should be admitted into evidence.

. . .

Based upon these findings and conclusions the motion to suppress was denied.

Searches conducted without properly issued search warrants are *per se* unreasonable under the Fourth Amendment, unless they fall within certain specific exceptions. Among these exceptions are exigent circumstances and consent to search. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564, *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed. 2d 120 (1971). The trial court did not find that either of these exceptions existed, but denied the motion to suppress because he concluded that "a search warrant was not required for Detective Philbeck to enter the Jolley home and conduct an investigation of the shooting." The state first contends that the trial court was correct based upon the theory that the search was conducted under exigent circumstances. Secondly, the state contends that Detective Philbeck had consent to search the house. We cannot agree with either of these contentions.

The exigent circumstances argument must be rejected in light of the United States Supreme Court decision in *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed. 2d 290 (1978). In *Mincey* a gun battle erupted during an undercover drug buy at defendant's apartment. Once this happened officers stormed the apartment and rendered aid to the wounded. Within ten minutes of the shooting, detectives not involved in the undercover transaction arrived at the apartment and began a four day search of the premises. Among the items seized during the search were illegal drugs. Defendant was convicted of assault, homicide and narcotics offenses. The Arizona Supreme Court, in upholding the narcotics convictions, held that the warrantless search of defendant's apartment was permissible since it was part of a routine homicide investigation. On appeal, the United States Supreme Court reversed defendant's conviction holding that the warrantless search violated defendant's constitutional rights. In its decision the Court said:

> We do not question the right of the police to respond to emergency situations. . . . [t]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. . . . But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation . . .'

(Citations omitted.) *Id.*

In the case at bar, when Detective Philbeck arrived at the scene, defendant and the victim had been removed, and the scene, as Philbeck found it presented no exigent circumstances. Under the rule of *Mincey v. Arizona, supra,* the legality of Detective Philbeck's search could not be based on exigent circumstances.

The state also contends that Detective Philbeck was in the house with the consent of the defendant. "It is well settled that a person may waive his right to be free from unreasonable searches and seizure. A consent to search will constitute such a waiver, only if it clearly appears that the person voluntarily consented, or permitted, or expressly invited and agreed to the search."

*State v. McPeak*, 243 N.C. 243, 90 S.E. 2d 501 (1955). When the state relies upon consent as a basis for a warrantless search, the police have no more authority than that they have been given by the consent. 2 W. LaFave, *Search and Seizure*, § 8.1 (1978). The trial court did not find that there was a consent to search. When a trial court makes no findings of fact relating to an issue and there is no conflict in the voir dire testimony "the necessary findings are implied" from the court's admission of the evidence. *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976). Under the rule of *Biggs* we imply that the trial court found that consent was given in light of the denial of defendant's motion to suppress. The court's findings of fact are conclusive on appeal only if they are supported by competent evidence. *State v. Biggs, supra.*

In the case at bar the only consent given was consent, in the form of a phone call, to come into the house to aid the victim. We do not believe that this invitation can properly be used to show consent to a search of the premises by an officer who was not involved in aiding the victim. There was nothing in defendant's conversations with Deputy Summers to indicate that defendant consented to a search by Detective Philbeck, and defendant never spoke to Detective Philbeck at all. We are unable to agree that there was any evidence to support a finding that defendant consented to Philbeck's search.

Having found no exigent circumstances or consent which would justify a warrantless search, we hold that the trial court erred in denying defendant's motion to suppress. We therefore reverse defendant's conviction and remand the cause for a new trial.

Reversed and remanded.

Judge PHILLIPS concurs.

Judge BRASWELL dissents.

Judge BRASWELL dissenting.

I respectfully dissent and would vote no error. The majority opinion defines the scope of the defendant's consent too narrowly and it unreasonably restricts the ability of law enforcement officers to investigate probable crimes when called to the scene.

State v. Jolley

Eight shots were fired from the rifle. Seven wounds of entry were counted in the body of the husband.

The defendant testified that after the rifle was fired:

The next thing I remember is that he was lying on the floor hurt. I threw the gun behind me and went to him. I don't remember the gun going off. He was laying face down on the floor and said "Get help." I went to the telephone and dialed the operator to get help.

In response to a general call for help, the EMS personnel, Deputy Summers and Detective Philbeck were notified and sent to the Jolley home. By making this phone call, the defendant gave her consent for entry into the home to those who usually respond to such calls for help. The record shows that Deputy Summers arrived at 3:00 p.m. and found the EMS personnel performing CPR on Mr. Jolley. Detective Philbeck arrived at 3:05 p.m. The defendant in her brief does not object to Deputy Summers' entry into her home, further indicating that her consent was not limited only to emergency medical technicians. Both officers saw the rifle in question in plain view. Detective Philbeck actually seized the rifle, along with eight .22 caliber shell casings from various spots about the den. I believe that the Constitution does not require such a technical tightrope walking of the rules of search and seizure. The constitutionality of a seizure should not depend on which officer arrived and entered the house first. The law enforcement officers' legal authority to be in the house should not be lost, like losing one's place in line, because the first officer to arrive had left the house to escort the defendant outside and because the officer who arrived five minutes later [but pursuant to the original call for help] failed to beat the body out of the house to justify exigent circumstances.

The majority opinion states that "[i]n the case at bar the only consent given was consent, in the form of a phone call, to come into the house to aid the victim. We do not believe that this invitation can properly be used to show consent to a search of the premises by an officer [Detective Philbeck] who was not involved in aiding the victim." The defendant did not limit her consent in such a fashion and the officers called to her home were under no duty to ask how long consent would last. Detective Philbeck, like Deputy Summers, entered the premises to conduct a general in-

vestigation into a possible homicide. This entry was made possible without a warrant by the defendant's consent. Also, contrary to the majority opinion, Philbeck searched only the kitchen-den area which made up one large open room in the Jolley home. He did not search the entire premises. The defendant's consent and the limited search are in themselves sufficient to distinguish this case from *Mincey v. Arizona, supra.*

I would hold that the trial court's findings of fact are supported by competent evidence and that the defendant's motion to suppress was properly denied.

In the alternative, applying the law of *State v. Johnson,* 310 N.C. 581, 313 S.E. 2d 580 (1984), I would vote to remand for a new *voir dire* hearing on both the subject of consent and exigent circumstances. As in *Johnson,* it could be said here that there is a lack of sufficient findings of fact and conclusions of law in this case, as well as the lack of evidence in the transcript, for our review of the legality of the entry of law enforcement officers into the dwelling house pursuant to a general call for help. It could be that on this record that both the majority and myself are engaging in speculation.

I dissent.