STATE v. GHAFFAR

[93 N.C. App. 281 (1989)]

No error.

Judges WELLS and JOHNSON concur.

---

STATE OF NORTH CAROLINA v. ISA ABDUL GHAFFAR

No. 8716SC1107

(Filed 4 April 1989)

**Searches and Seizures § 44— search of automobile trunk—findings at suppression hearing—insufficient**

A trial court order suppressing evidence seized from the trunk of defendant's automobile was remanded for a new hearing for specific findings dealing with the issues of whether the officer had a reasonable and articulable suspicion to detain defendant pursuant to his inquiries, whether the length of the detention was reasonable, and whether defendant gave his oral consent to search the vehicle. The evidence at the suppression hearing presented questions of fact which can only be resolved by the factfinder, based largely on the credibility of the witnesses.

Chief Judge HEDRICK concurs in the result.

APPEAL by the State from the Order of *Fred J. Williams, Judge,* entered 14 August 1987 in ROBESON County Superior Court. Heard in the Court of Appeals 9 May 1988.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General W. Dale Talbert, for the State, appellant.*

*Cohen, Dunn & Sinclair, by Gerald Bruce Lee and James M. Desimone; and Beaver, Thompson, Holt & Richardson, by H. Gerald Beaver, for defendant appellee.*

COZORT, Judge.

This appeal is from an order of the trial court granting the defendant's motion to suppress evidence seized from the trunk of his automobile. Defendant was stopped on an interstate highway for speeding and driving without a seat belt. The officer making the stop testified that the defendant consented to the search. The

trial court excluded the evidence after concluding that the State failed to satisfy its burden of proving consent. We vacate and remand for a new hearing on defendant's motion. The facts and procedural history follow.

On 20 February 1987, defendant was arrested and charged with trafficking by transportation of more than 400 grams of cocaine. On 19 May 1987, the defendant filed a motion to suppress evidence seized when the defendant was arrested. The motion came on for hearing before the Superior Court of Robeson County on 16 July 1987. At the motion to suppress hearing, the State and the defendant presented sharply conflicting versions of the events leading up to the arrest of the defendant on 20 February. Officer Willard Mitchell of the North Carolina Highway Patrol testified that he stopped an automobile driven by defendant on Interstate 95 in Robeson County because the car was being driven in excess of the speed limit and the driver was not wearing a seat belt. Defendant was the driver of the automobile. Upon request, the defendant produced his driver's license and the vehicle registration card. The defendant's driver's license showed a Virginia address. The registration card for the vehicle identified the owner to be Gail Woods of College Park, Georgia. Defendant told Officer Mitchell that he now lived in Washington, D. C. When asked who owned the car, defendant responded, "Philip." Defendant did not know Philip's last name or address and did not know Gail Woods. Defendant became very nervous and talkative. He began to tell Officer Mitchell about an investigation by the Equal Employment Opportunity Commission, about a trip to Florida to escape personal problems, and about going to Atlanta to submit a job application. Defendant was unable to tell Officer Mitchell specifically how he came into possession of the automobile. According to Officer Mitchell, the information and answers the defendant was giving were not responsive to the questions he was asking. Officer Mitchell asked defendant if he had any weapons, alcohol or contraband in the vehicle. Defendant replied negatively. Officer Mitchell asked defendant for permission to search the vehicle, and defendant gave the officer permission to search. Upon receiving permission to search the vehicle, Officer Mitchell radioed for a backup officer to come to the scene to assist him. He also requested by radio a check through the computer to determine whether defendant's automobile had been stolen. There were no warrants outstanding on the vehicle. When the backup officer arrived, the backup officer stayed

STATE v. GHAFFAR

[93 N.C. App. 281 (1989)]

with defendant while Officer Mitchell searched defendant's automobile. In the trunk, he found, among other things, a loaded .357 magnum revolver. There was also a red plastic bag which contained a shoe box wrapped in tape. Officer Mitchell pulled the tape off the box and found a freezer bag full of coffee grounds inside. Under the coffee grounds, Officer Mitchell found a rectangular-shaped package wrapped in tape. Officer Mitchell approached defendant's car, and without his saying anything to defendant, the defendant stated that the red bag was not his. Officer Mitchell cut open the small package and found inside it a white powdery substance which later tested as cocaine. After Officer Mitchell had opened the small package with the white powdery substance, he placed defendant under arrest and advised him of his rights. Defendant was taken downtown for processing. He was not issued a traffic citation until after he was taken downtown. Officer Mitchell did not obtain written consent to search defendant's automobile at the scene because he was not driving his regular car, and the substitute car he was driving contained no consent to search forms. Officer Mitchell testified that his initial conversation with defendant lasted approximately 15-20 minutes. After he obtained defendant's consent to search, it took approximately 15 minutes for the backup officer to arrive. The search locating the cocaine took place about an hour after Officer Mitchell initially stopped the defendant. The traffic citation was issued about 90 minutes after the initial stop.

The defendant's testimony at the suppression hearing sharply contradicted that of Officer Mitchell. The defendant testified that, when he was initially stopped, Officer Mitchell told him he was stopped for not wearing a seat belt. He was not told he was stopped for speeding. The defendant denied that he was ever asked to give permission to search his car, and he denied ever giving any consent to search. He also denied ever making statements to the officer about any employment investigation, personal problems, or any of the other matters testified to by Officer Mitchell. He testified that the search of his car was conducted without his consent by Officer Mitchell while he was sitting in a patrol car with the backup officer who was called by Officer Mitchell. He also testified that while he was stopped on the side of the road, his driver's license and the automobile registration card were never returned to him, and he was never given a citation. Thus, he did not feel he was free to leave at any time.

On 14 August 1987, the Superior Court issued an order granting the defendant's motion to suppress the evidence seized by Officer Mitchell and the statements made by the defendant. In that order, the trial court made the following pertinent findings of fact and conclusions of law:

5. The Sergeant approached the vehicle and observed the defendant, a thirty-seven year old black male, was the operator and sole occupant. The Sergeant asked the defendant for his operator's license, which was produced, identifying him as Isa Abdul Ghaffar, a resident of 195 Highland Ave., Wytheville, Virginia;

6. The defendant responded to the Sergeant that he was living in Washington, D.C. The defendant also told Sergeant Mitchell a man named Phillip lent him the vehicle; but, the defendant did not know Phillip's last name or any other information about Phillip, or would not divulge it.

7. The Sergeant attempted to inquire further about the vehicle ownership. However, Sergeant Mitchell determined that the defendant was acting nervous. The defendant related that he was coming from Jacksonville, Florida and going to Washington, D.C. The defendant denied knowing Gail Woods, the registered owner of the vehicle and did not or could not answer the sergeant's further inquiries about his possession and the ownership of the vehicle;

8. Based upon the defendant's statements about how he got the vehicle and why, the nature of his travels and other statements which were unsatisfactory to the officer, Sergeant Mitchell asked the defendant if there was any alcohol, contraband or weapons in the vehicle and the defendant replied "No."

9. While still in possession of the defendant's license and registration, Officer Mitchell radioed for an NCIC check on the vehicle and defendant's license, which checked out; the defendant being in the custody of Officer Mitchell, in that the defendant was not free to leave, as no citation had been issued.

10. Request to search the car was sought by Sergeant Mitchell, but no consent to search form was presented to the defendant, as is normal procedure for warrantless searches not supported by other exigent circumstances or probable cause.

11. That approximately twenty to thirty minutes elapsed from the time of the stop until Officer Mitchell radioed for backup; Officer Rittenhouse arrived to serve as a backup while he searched the automobile driven by the defendant;

12. Upon Trooper Rittenhouse's arrival, Mr. Ghaffar was immediately placed in the trooper's vehicle. By this time, thirty to forty minutes had elapsed since the defendant was stopped for the infractions;

13. Sergeant Mitchell then began to search the vehicle. The Sergeant found nothing in the passenger compartment and taking the keys from the ignition switch, opened, and searched the trunk. In the trunk the Sergeant found a bag containing numerous oranges, limes, and lemons, which were several days old. There was a bag containing a recently purchased "London Fog" coat. There was a garment bag lying on the trunk floor containing items of clothing and a loaded .357 Magnum pistol in a leather holster. Sergeant Mitchell also observed a red plastic shopping bag and in it found a shoe type box taped with plastic tape. The Sergeant opened the box and saw a freezer ziploc bag containing what appeared to be coffee grinds; and under that bag was a rectangular shaped package wrapped in waterproof tape with lettering and writing on it. The Sergeant cut through the tape wrapping and found a white powdery substance similar to cocaine. The search of the entire vehicle took approximately thirty minutes;

14. The Sergeant returned to Trooper Rittenhouse's vehicle with the package of white powdery substance. The Sergeant advised the defendant he was under arrest for possession and transportation of cocaine and advised him of his "Miranda Rights";

15. The Sergeant then called State Bureau of Investigation Agent James Bowman to the scene for a field test of the white powdery substance. The preliminary field test indicated a cocaine type substance. The defendant was then transported to the Robeson County Courthouse where he was served with warrants charging him with possession of cocaine and transportation of cocaine and a citation for speeding 65 in a 55 zone.

16. The entire episode, from the time the defendant was stopped until he was issued a citation for the original stop and drug related offenses lasted approximately ninety minutes.

STATE v. GHAFFAR

[93 N.C. App. 281 (1989)]

17. While being served with papers relating to all of the criminal offenses and infractions, the defendant refused to sign a consent to search form.

CONCLUSION [SIC] OF LAW

* * * *

1. Sergeant Mitchell made a routine stop for speeding and a seat belt violation pursuant to the infraction statutes of the State of North Carolina.

2. That Sergeant Mitchell pursued a drug investigation initially after the stop made for the traffic violations, and by retaining the registration and driver's license presented to him by the defendant, effectively deprived the defendant of his right to leave;

3. That the State has not satisfied its burden, by showing by a preponderance of the evidence, that the defendant, Isa Abdul Ghaffar, gave consent to search the automobile from which the contested evidence was seized.

4. That the seizure of the defendant by Officer Mitchell on the infractions violations for this extended period of time without probable cause, as to other criminal activity and consistent with 15A-1113(b) and (c), violates the defendant's constitutional rights against unreasonable seizures as guaranteed by the 4th and 14th Amendments of the U.S. Constitution and N.C. Constitution, Article I, § 19;

5. That the search of the automobile without probable cause, and the nonexistence of any exigent circumstance justifying the search where voluntary consent has not been given by the defendant violates the defendant's rights against unreasonable searches as guaranteed by the 4th and 14th Amendments of the U.S. Constitution and N.C. Constitution Article I, § 19.

The State filed timely notice of appeal. The State argues that the trial court's order should be vacated and the cause remanded for further findings and conclusions. We agree.

The trial court's decision to grant the motion to suppress appears to be based on its conclusions of law numbered 3, 4, and 5. In those conclusions, the trial court concluded that (1) the State

has not satisfied its burden of proving that the defendant gave consent to search, (2) that the seizure of the defendant for an extended period of time was without probable cause in violation of the defendant's constitutional right, and (3) that the search without probable cause and without voluntary consent violated the defendant's constitutional rights. These conclusions are not supported by the findings of fact made by the trial court.

The defendant's motion to suppress and the evidence presented at the suppression hearing raised two issues: (1) Was the defendant detained for an unreasonable length of time after he was stopped for speeding and driving without a safety belt? and (2) did the defendant voluntarily consent to the search of his vehicle and its contents? The rules governing encounters between law enforcement officers and citizens have been discussed in many cases in the courts of this State and the United States Supreme Court in recent years. In *State v. Allen*, 90 N.C. App. 15, 367 S.E. 2d 684 (1988), this Court listed and summarized many of the recent pertinent cases dealing with the detention of citizens by law enforcement officers. *Id.* at 26-27, 367 S.E. 2d at 690-91. There we stated the following:

> "2. Brief seizures must be supported by reasonable suspicion;" . . .
>
> * * * *
>
> The facts in this case involve an ongoing and unfolding situation; therefore, the facts must be analyzed in light of the extent of the intrusion caused by the officers' actions and the facts and circumstances known by the officers to warrant the intrusion as the situation developed.
>
> * * * *
>
> Even if we were to accept defendant's argument that [a seizure had occurred], the officer did have a reasonable and articulable suspicion that defendant was engaged in criminal activity.

*Id.* at 27-28, 367 S.E. 2d at 691 (citations omitted).

In the case below, the trial court found and concluded that the defendant was in custody and was not free to leave. This is equivalent to the court's finding that the defendant had been seized. That finding, however, does not stop the trial court's in-

quiry. As we stated in *Allen,* the trial court must determine whether the officer had a reasonable and articulable suspicion that the defendant was engaged in criminal activity. The trial court below found only that the defendant was seized for an extended period of time. The amount of time alone is not all the trial court should consider. The trial court should consider all of the circumstances in determining whether the amount of time the officer detained the citizen was reasonable under all the attendant circumstances. *See State v. Darack,* 66 N.C. App. 608, 312 S.E. 2d 202 (1984).

Officer Mitchell testified at the suppression hearing below that he was suspicious that the defendant was involved in some criminal activity because he could not specifically identify the owner of the automobile, and the officers' follow-up questions about the automobile were met with inconsistent and unresponsive answers. The defendant's testimony disputed Officer Mitchell's testimony. Therefore, there was a credibility issue involved and a factual determination which could be made only by the trial court, as the finder of fact. When the trial court fails to make sufficient factual findings to resolve the issues presented, the case must be remanded for a new hearing. *State v. Johnson,* 310 N.C. 581, 313 S.E. 2d 580 (1984); *State v. Prevette,* 39 N.C. App. 470, 250 S.E. 2d 682, *disc. rev. denied,* 297 N.C. 179, 254 S.E. 2d 38 (1979). Thus, we must vacate the trial court's order and remand the case for a new hearing at which the trial court must make specific findings dealing with the issues of whether Officer Mitchell had a reasonable and articulable suspicion to detain the defendant to pursue his inquiries and whether the length of the detention was reasonable.

The trial court likewise failed to make sufficient findings on the issue of whether the defendant voluntarily gave consent to the search of his automobile. Officer Mitchell testified that defendant gave consent to search, and the trial court could have found that consent was given freely and voluntarily. The defendant testified that he did not give consent and that the officer never asked for consent to search. In *State v. Brown,* 306 N.C. 151, 170, 293 S.E. 2d 569, 582, *cert. denied,* 459 U.S. 1080, 74 L.Ed. 2d 642, 103 S.Ct. 503 (1982), our Supreme Court held that the issue of whether a consent to a search was voluntary or the product of duress or coercion is a question of fact which must be determined from the totality of all the circumstances. In its order below, the trial court found that the defendant refused to sign a consent

form and then concluded that the State had failed to satisfy its burden of proving that the defendant had given consent to search. The trial court's finding does not support its conclusion. The conclusion appears to be based on a legal misperception that consent must be in writing to be valid. There is no requirement that consent to search be made in writing. *See* N.C. Gen. Stat. § 15A-221 (1988), and *e.g.*, *State v. Glaze*, 24 N.C. App. 60, 210 S.E. 2d 124 (1974).

The trial court's order below simply does not resolve the issue of fact of whether the defendant gave his oral consent to search the vehicle. The evidence at the suppression hearing presented a question of fact which can be resolved only by the factfinder, largely on the credibility of the witnesses.

For these reasons, this case must be remanded to the Superior Court of Robeson County for a new hearing on defendant's motion to suppress.

Vacated and remanded.

Judge WELLS concurs.

Chief Judge HEDRICK concurs in the result.